626 A.2d 528

DELAWARE COUNTY SOLID WASTE
AUTHORITY, Appellant,

v.

BERKS COUNTY BOARD OF ASSESSMENT APPEALS
and Boyertown Area School District, Appellees.

Supreme Court of Pennsylvania.

Argued Jan. 27, 1993.

Decided June 1, 1993.

Reargument Denied Aug. 12, 1993.

Charles K. Serine, D.C.S.W.A., Reading, for appellant.

Louis R. Rizzuto, Bd. of Assmt., Reading, Jeffrey T. Sultanik, Wendy G. Rothstein, Brian E. Subers, Boyertown School Dist., Lansdale, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

MONTEMURO, Justice.

The issues presented for our review concern the extent to which property owned by a municipal authority and used as a landfill is either immune or exempt from taxation. The undisputed facts are as follows: The Delaware County Solid Waste Authority ("Authority") is a municipal authority created pursuant to the Municipality Authorities Act of 1945, Act of May 2, 1945, P.L. 382, 53 P.S. § 301, et seq. The Authority owns and operates the Colebrookdale Landfill ("Landfill") which is located in Berks County and is part of the Boyertown Area School District.[1] On January 29, 1985, the Authority entered into a stock purchase agreement ("Agreement") with R.R.M. Corporation ("R.R.M.") for the acquisition of all of R.R.M. outstanding stock. Settlement on the Agreement occurred on March 26, 1985.

Prior to this Agreement, R.R.M. ran Landfill as a private concern with Delaware County as one of its major users. Pursuant to the Agreement, the land owned by R.R.M. was transferred to the Authority, and members of the Authority became the officers of R.R.M. The Landfill continued to be operated through the corporate vehicle of R.R.M. from the March 26, 1985 settlement, until April 26, 1986 when a Department of Environmental Resources ("DER") permit to run the operation could be transferred to the Authority.

The structure of the Agreement provided a payment of $17,490,000.00 to R.R.M. at closing. An additional $18,500,-000.00 was deposited in an escrow account to be paid to stockholders of R.R.M. upon, *inter alia*, the approval by DER

---

1. The school district intervened in this matter.

of a proposed expansion of the Landfill.[2] When the Authority acquired R.R.M., the Landfill property consisted of approximately 320 acres, of which 60 acres was actually used for rubbish disposal. Through various purchases and condemnations, the Authority acquired an additional 224 acres of land to bring the total area of the Landfill to approximately 544 acres. Pursuant to DER regulation, a landfill disposal area must be surrounded by a buffer zone. Presently, 296 of the 544 acres of the Landfill are not essential to either the disposal area or as part of the required buffer zone.[3]

During the period of the Agreement, the principal stockholder undertook to use his best efforts to obtain the necessary authorizations for the additional storage capacity. In the event that any of the land obtained could not be used by the Authority as either a disposal area or as a buffer zone, former stockholders of R.R.M. were given an option to repurchase this land at fair market value.

After the Landfill property was assessed for a local real estate tax, the Authority appealed to the Berks County Board of Assessment Appeals ("Board"), claiming that as a municipal authority it was immune from taxation. In the alternative, the Authority asserted it was exempt from taxation since the property was being used for a public purpose. The Board rejected both of these claims. The Authority appealed to the Berks County Court of Common Pleas. The trial court bifurcated the proceedings and first addressed the immunity and exemption issues. After conducting a hearing, the court issued an order that rejected the Authority's claim to immunity, but granted the Authority a limited exemption. The exemption was limited to the 244 acres that were indispensable to the operation of the Landfill. The court also determined that the Authority was not entitled to an exemption until April 26, 1986, when the permits for operating the Landfill were trans-

2. The principal former stockholder of R.R.M. also agreed for additional consideration not to compete with the Landfill for a period of five years.

3. The Authority does have applications pending with DER to permit expansion of the site. This proposed expansion contemplates the utilization of a portion of this excess buffer zone.

ferred into the name of the Authority. The Commonwealth Court permitted an appeal of this interlocutory order pursuant to 42 Pa.C.S.A. § 702(b), and affirmed.[4] 142 Pa.Cmwlth 424, 598 A.2d 91. We granted allocatur and now reverse.

■■■■ The Authority asserts that the Commonwealth Court erred in determining that it was not immune from local taxation. In the alternative, the Authority asserts that it was exempt from taxation for the entire 544 acres from the March 1985 acquisition of the land. Initially, we note that there is an important distinction between assertion of immunity as opposed to exemption. Property is immune from taxation if the taxing body has not been granted the authority to levy a tax. On the other hand, an exemption does not implicate the authority to tax, but rather excludes specified property from taxation. Thus, by asserting an immunity, the Authority is claiming that the local political subdivisions lacked the authority to levy the tax. *See SEPTA v. Board of Assessment and Revision of Taxes of Delaware County,* 13 Pa.Commw. 207, 319 A.2d 10 (1974). It is well settled that property owned by the Commonwealth and its agencies is beyond the taxing power of a political subdivision. Thus, absent an explicit statutory grant of authority, property owned by the Commonwealth is immune from taxation. *Appeal of Board of School Directors of Owen J. Roberts School District,* 500 Pa. 465, 457 A.2d 1264 (1983) citing *Commonwealth v. Dauphin County,* 335 Pa. 177, 6 A.2d 870 (1939); *SEPTA v. Board of Assessment and Revision of Taxes of Delaware County,* 13 Pa. Commw. 207, 319 A.2d 10 (1974) citing *Commonwealth v. Erie Metropolitan Transit Authority,* 444 Pa. 345, 281 A.2d 882 (1971), and *Fischer v. Pittsburgh,* 383 Pa. 138, 118 A.2d 157 (1955). Further, we strictly construe statutes purporting to permit taxation of Commonwealth property, and such a grant may not be found by implication. *Appeal of Harrisburg School District,* 53 Pa.Commw. 299, 417 A.2d 848 (1980) citing *Mastrangelo v. Buckley,* 433 Pa. 352, 250 A.2d 447 (1969).

**4.** The Commonwealth Court did not address whether the trial court erred determining the timing of the exemption.

■ The property in the present case is owned by a municipal authority created pursuant to the Municipal Authority Act of 1945 ("Act"). Municipal authorities created pursuant to the Act are independent agencies of the Commonwealth. *Simon Appeal,* 408 Pa. 464, 184 A.2d 695 (1962). *See also Commonwealth v. Erie Metropolitan Transit Authority,* 444 Pa. 345, 281 A.2d 882 (1971) (municipal authority is encompassed in the term Commonwealth for purposes of statutory exemption contained in fuel tax). As such, the Authority argues that the Commonwealth Court erred in determining that property owned by the Authority was not immune from taxation. We agree.

■ The Commonwealth Court recognized these established principles, but held that the immunity was not applicable because the Municipality Authority Act of 1945 authorized the taxation of property owned by municipal authorities. The court found this express delegation of the authority to tax Commonwealth property in 53 P.S. § 318. This section reads in relevant part:

§ 318  **Exemption from taxation and payment in lieu of taxes**

The effectuation of the authorized purposes of Authorities created under this Act shall and will be in all respects for the benefit of the people of the Commonwealth of Pennsylvania, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions, and since such Authorities will be performing essential governmental functions in effectuating such purposes, such Authorities shall not be required to pay any taxes or assessments upon any property acquired or used by the authority for such purposes.

We do not agree with the Commonwealth Court that "[Section 318] clearly indicates that municipal authorities are required to pay taxes and assessments on their property unless that property falls within the stated exception." It strains logic to find that the language, "such Authorities shall not be required to pay any taxes or assessments upon any property acquired

or used by the Authority for such purposes" operates as an express grant of authority to tax an agent of the Commonwealth. This is particularly so since any alleged grant of authority must be strictly construed. Contrary to the Commonwealth Court's holding, this section titled, "Exemption from taxation" evinces a legislative intent to reaffirm the long standing rule that property owned by a municipal authority should not be taxed. *See SEPTA v. Board of Assessment and Revision of Taxes of Delaware County,* 13 Pa.Commw. 207, 319 A.2d 10 (1974) (interpreted similar exemption language as an indication of a legislative expression that property owned by a Commonwealth agency was immune from taxation). Thus, the Commonwealth Court erred in transforming 53 P.S. § 318 into an express grant of authority to tax.

■ Property owned by a Commonwealth agency, however, is not given blanket immunity. If an agency acts outside its authorized governmental purposes, then its immunity is not automatic. *Southwest Delaware County Municipal Authority v. Aston,* 413 Pa. 526, 533, 198 A.2d 867, 971, citing *Homestead Borough v. Defense Plant Corp.,* 356 Pa. 500, 505, 52 A.2d 581, 585 (1947). For example, in *West View Borough Municipal Authority Appeal,* 381 Pa. 416, 113 A.2d 307 (1955), our court permitted taxation of property that was owned by a municipal authority. In *West View,* a municipal authority used a building as part of its operation of a water project. A portion of the building that was not needed for the project was leased to three commercial tenants. This court found that the portion of property owned by the municipal authority that was rented out to commercial concerns was not exempt from taxation.

The Board asserts that *West View Borough Municipal Authority Appeal,* is supportive of its position because the court assumed that the authority had to rely on a statutory exemption to avoid taxation and that implicit in this assumption is that immunity analysis does not apply. We decline to read *West View* so broadly as to have it implicitly overrule the long standing immunity granted to governmental agencies. Instead, we read *West View* as consistent with the proposition

that property which is not acquired or used for authorized governmental purposes will not enjoy governmental immunity.

■ In the present case, the acquisition of land to operate a landfill was within the municipal authority's stated purposes and powers. 53 P.S. § 306. Section 306 provides in relevant part:

§ 306. **Purposes and powers; general**

A. Every authority incorporated under this act shall be a body corporate and politic, and shall be for the purpose of acquiring, holding, constructing, improving, maintaining and operating, owning, leasing, either in the capacity of lessor or lessee, projects of the following kind and character ... (a)(7) facilities and equipment for the collection, removal or disposal of ashes, garbage, rubbish and other refuse materials by incineration, landfill or other methods.

Thus, the Authority has not acted outside its authorized purposes or powers, and has not forfeited its tax immunity status.

■ The Board argues that neither an immunity nor an exemption should cover the 296 acres of excess buffer zone that is not indispensable to the operation. The concern of the Board is that a Commonwealth agency should not be able to take land that is not being used for the benefit of the public off the tax rolls. As the court in *Appeal of Municipal Authority of West View Tax Case,* 175 Pa.Super. 641, 107 A.2d 130 (1954), *aff'd* 381 Pa. 416, 113 A.2d 307 (1955) stated,

If a municipal authority can lease one residential property for revenue, and thus keep it off the tax rolls there is no reason why it might not acquire an entire residential section of a township against future use, and in the meantime, make it the course of similar income without liability for property taxes.

While we agree with the principle espoused in *Appeal of Municipal Authority of West View,* we do not agree that these concerns are implicated by the instant facts. We do not find that the immunity is limited to the absolute minimum of property necessary to operate the Landfill. Rather, the immunity covers property that was acquired or used for an

authorized purpose. Certainly, if it could be shown that this excess buffer land was acquired or used for some purpose other then the operation of a rubbish facility, then the scope of the immunity would be called into question. However, there was no evidence that this excess buffer zone was acquired or used for a purpose other than as part of the Landfill operation. In fact, there was uncontested testimony that the excess buffer zone formed a doughnut shaped ring around the Landfill that would not meet any other zoning regulations for any permitted use in the area. Thus, if the land was not used as either excess buffer or as a site for future expansion it could serve no other commercial purpose.

■ The Board, relying on our decision in *Appeal of Board of Directors of Owen J. Roberts School District*, 500 Pa. 465, 457 A.2d 1264 (1983), also argues that the Authority is not immune from taxation since the prior private owners of the landfill continue to have substantial interests in the property. In *Owen J. Roberts*, the Rodebaughs' transferred an estate known as Welkinweir to West Chester State College subject to both a prior easement in gross and a statement of principles. Welkinweir consisted of 162 acres of land, a house containing twenty or more rooms, a garage and equipment building. The easement in gross was granted to the Green Valley association which covenanted *inter alia*, to maintain the property in a stated condition, and to ensure the property was used for certain limited purposes. After our court analyzed the prior restrictions on the land, we noted that the Rodebaughs appeared to have reserved to themselves a life estate interest in the property. We held that the trial court erred in assuming that the property was immune from taxation based solely on the transfer of record title. Rather, the proper analysis requires the court to look beyond the name on the title to the property and to examine whether a private party actually holds the incidents of ownership.[5]

In essence, the argument is that the immunity does not apply in the present case because the agency does not have

5. Ultimately, we remanded the case since the relationship between Green Valley and the Rodebaughs was not developed enough to determine if a substantial interest was retained.

sufficient incidents of ownership. Here, the Authority purchased all of the stock of R.R.M., the land was transferred, and all of the officers of R.R.M. resigned and were replaced by Authority officials. From March 26, 1985, the Authority had control of the operation of the Landfill. The only interest prior stockholders of R.R.M. maintained was the right to repurchase the property if it was determined that the Authority could not successfully expand and use the land for the stated purpose of operating the Landfill. Thus, it is clear that the present owner of the property is the Authority, and that there was no reservation of a beneficial interest that was potentially present in *Owen J. Roberts*. Further, the fact that the landfill was operated through the R.R.M. corporate vehicle did not alter the fact that the Authority controlled R.R.M., owned the land, and operated the site.

As such, we find that there is no basis to deny the Authority immunity from local taxes for the property in this case.[6]

Order Reversed.

───────

6. Since we have found the entire property to be immune, we do not have to reach the exemption issues.