833 A.2d 710

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY (SEPTA), Appellant,**

v.

**BOARD OF REVISION OF TAXES, City of Philadelphia and School District of Philadelphia, Appellees.**

Supreme Court of Pennsylvania.

Argued Oct. 22, 2002.

Decided July 28, 2003.

Reargument Denied Sept. 25, 2003.

708

Carrie E. Watt, Michael Sklaroff, for Southeastern Pennsylvania Transportation Authority.

Richard Feder, Lewis Rosman, for Bd. of Revision of Taxes of Philadelphia, City of Philadelphia and The School District of Philadelphia

Before ZAPPLA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## *OPINION*

Chief Justice CAPPY.

This appeal raises the question of whether property owned by Appellant, the Southeastern Pennsylvania Transportation Authority (hereinafter "SEPTA") and leased to commercial tenants is immune from local taxation.[1] The Commonwealth Court held that SEPTA is not immune from such taxation, since leasing commercial real estate is not part of SEPTA's governmental function. For the reasons stated herein, we affirm the decision of the Commonwealth Court.

SEPTA purchased property at 1234 Market Street in the City of Philadelphia. The property consists of a twenty-story office building. The property has approximately 664,664 square feet of office space that can be leased. SEPTA currently occupies 446,035 square feet of the office space, which it uses as its headquarters. It leases the remaining space to commercial, non-profit, and government organizations.

The Board of Revision of Taxes of the City of Philadelphia (hereafter "Board") determined that the fair market value of the property for the years 1994 through 1999 was $25,500,000.00. SEPTA applied for a real estate tax exemption with the Board on the basis that the property was immune and exempt from taxation for the years 1994 and thereafter. The Board granted a partial real estate tax exemption for the portions of the property used by SEPTA and other government and non-profit entities and exempted eighty-five percent of the property's assessed value for 1994 and subsequent years. The Board set the taxable assessed value of the property at $1,224,000.00 and the exempt assessed value of the property at $6,936,000.00.

---

1. Although the Commonwealth Court reached both the question of tax exemption and tax immunity, the sole question raised before this court relates to tax immunity.

SEPTA appealed the Board's decision to the Court of Common Pleas. The parties agreed that the portion of the property occupied by SEPTA, government organizations, non-profit entities, and any vacant space, common areas, and the parking garage were not subject to taxation. Thus, the only portion of the property that was at issue before the trial court was the portion of the building that SEPTA leased to commercial entities.

Following a hearing, the trial court granted SEPTA's appeal and reversed the Board. The trial court found that SEPTA's use of its property to raise revenue and reduce expenses was for a public purpose: "The rental of the space by SEPTA is for [sic] public purpose as it is intended to aid a struggling governmental entity, an entity intended to serve the public, to remain operating." Trial court opinion at 9. Accordingly, the court held that SEPTA was exempt from taxation regardless of whether or not portions of the property are leased to third party commercial entities. *Id.*

On appeal, the Commonwealth Court reversed. *SEPTA v. Board of Revision of Taxes et al.,* 777 A.2d 1234 (Pa. Commw.2001). The Commonwealth Court explained that an agency of the Commonwealth is immune from taxation so long as it acts in accordance with the powers granted to it. "Therefore, SEPTA is immune from taxation until it acts outside its authorized purpose." 777 A.2d at 1238. The court then stated that the purpose of SEPTA is to operate a transportation system serving southeastern Pennsylvania; and the leasing of real estate solely to raise revenue is not an activity connected to this purpose. Accordingly, the court held that the excess property leased to commercial tenants was not immune from taxation. The court similarly concluded that SEPTA was not exempt from taxation since the commercial real estate business was not a governmental function.

This court granted allowance of appeal to address whether the Commonwealth Court erred in determining that the portion of SEPTA's property that it leased to commercial tenants was not immune from taxation.

SEPTA argues that our decision in *Delaware County Solid Waste Authority v. Berks County Bd. of Assessment Appeals,* 534 Pa. 81, 626 A.2d 528 (1993), governs the instant appeal. According to SEPTA, in *Delaware,* this court announced that an agency is immune from taxation when the agency was acting within its authorized governmental purposes and powers. Thus, Appellees [2] must show that the agency is acting outside of its authorized purpose and powers in order to tax SEPTA's property. In this case, Appellees cannot make this showing since the Legislature has given SEPTA the express authority to lease its real property in order to raise revenue, 74 Pa.C.S. § 1741(a)(12) and (a)(24). Thus, SEPTA concludes that the Commonwealth Court erred in determining that the excess property was not immune from taxation.

Appellees respond that *Delaware County* did not change the standard for tax immunity to make immune all acts within an agency's statutory power and authority. Instead, after *Delaware County,* the test continues to be whether the agency actually uses the property for a public purpose. Appellees argue that *Delaware County* made this clear by relying on the decision in *West View Borough Municipal Authority Appeal,* 381 Pa. 416, 113 A.2d 307 (1955). Thus, Appellees conclude that the Commonwealth Court properly employed and applied the "public purpose" test and the excess property was not immune from taxation.

■ The issue in this case is whether the Commonwealth Court applied the proper standard in evaluating SEPTA's tax immunity claim. As such, the issue presented involves a question of law. Our standard of review for a question of law is de novo; our scope of review is plenary. *Buffalo Twp. v. Jones,* 571 Pa. 637, 813 A.2d 659, 664 n. 4 (2002).

■ It is well settled that tax immunity is distinct from tax exemption. *Delaware County,* 626 A.2d at 530. However, in looking at the two concepts, courts of this Commonwealth have used the terms "immunity" and "exemption" interchange-

2. Appellees are the Board, the City of Philadelphia, and School District of Philadelphia.

ably. We will first look at tax immunity in an attempt to clarify the distinction between the two ideas.

The elementary premise underlying taxation is that the power to tax is exclusively vested within the legislature. *Commonwealth v. Dauphin County*, 335 Pa. 177, 6 A.2d 870, 871 (1939). "Property is immune from taxation if the taxing body has not been granted the authority to levy a tax." *Delaware County*, 626 A.2d at 530. As a general matter, property owned by the Commonwealth and its agencies is immune from taxation by a local subdivision in the absence of express statutory authority. *Dauphin County*, 6 A.2d at 872; *see also Delaware County*, 626 A.2d at 530; *Appeal of Bd. of Dir. of Owen J. Roberts*, 500 Pa. 465, 457 A.2d 1264, 1265 (1983). It cannot be presumed that general statutory provisions giving local subdivisions the power to tax local real estate, were meant to include property owned by the Commonwealth, since to allow such taxation would upset the orderly processes of government. *Dauphin County*, 6 A.2d at 872. Thus, in order to tax property owned by the Commonwealth, a local subdivision must establish that it has the authority to tax such property.

On the other hand, tax "exemption" carves out specified property from taxation that the taxing body otherwise has the authority to tax. *Delaware County*, 626 A.2d at 530. The exemptions are the result of Article VIII, Section 2 of the Pennsylvania Constitution, which provides that the General Assembly may by law exempt from taxation certain classes of property, including "that portion of public property which is actually and regularly used for public purposes." PA. CONST. Art. VIII, § 2(a)(iii). Thus, unlike immunity situations, the property is presumed to be subject to tax unless specifically excluded and the taxpayer must establish that the property is exempt from taxation.

Thus, the primary distinction between "immunity" and "exemption" is simply that "the ordinary presumption against exemption does not apply where the property involved is owned by the Commonwealth, since such property has for

reasons of public policy been consistently recognized as free from taxation." *Dauphin County,* 6 A.2d at 872–73.

Keeping this distinction in mind, we now turn to an analysis of the specific arguments presented in this case. Appellees' argument focuses on the test set forth in *West View,* a tax exemption case, as providing the proper analysis to review the instant matter; we will likewise begin our analysis with that case.

In *West View,* the Municipal Authority of the Borough of West View constructed a building for its own purposes. 113 A.2d at 308. It used part of the property for its own operations, leased part of the property to the Borough to rent for social events, and leased the remaining property to commercial entities. *Id.* The Board of Property Assessment placed an assessment value on the entire property. *Id.* at 309. The Authority appealed. The Court of Common Pleas held that the part of the land and building used by the Authority and the parking area used by the Borough were exempt from taxation. *Id.* However, the court determined that the remainder of the property was subject to taxation. *Id.* The Municipal Authority appealed to this court. *Id.*

On appeal, the court entertained the issue of the "extent of the exemption from taxation of its real estate to which the appellant Municipal Authority is entitled." 113 A.2d at 307. In answering this question, the court explained that in order to qualify for tax exemption it must be established that the property is being used for a public purpose. *Id.* (citing PA. CONST. Art. IX, § 1, which was renumbered to PA. CONST. Art. VIII, § 2 and amended April 23, 1968). However, "while a declaration by the legislature as to the existence of a public purpose is entitled to prima facie acceptance as to its correctness, it is not conclusive, it being a judicial question for the ultimate determination of the courts as to whether a proposed use is a public one." *Id.* Employing this standard, the court concluded that those portions of the property that were leased to the Borough and the commercial entities were not being used for a public purpose and therefore, were not exempt from taxation. *Id.* at 310.

Appellees argue that this court imported the *West View* standard into the tax immunity context in *Delaware County*. *Delaware County* involved the Delaware County Solid Waste Authority (hereafter "Authority"), a municipal authority created pursuant to the Municipal Authority Act of 1945. *Delaware County*, 626 A.2d at 529. The Authority bought a landfill, which consisted of approximately 320 acres, from a privately owned company. In addition to the landfill, the Authority acquired another 224 acres of land. *Id.* at 530. At the time of the appeal, 296 of the acres were not essential to the operation of the landfill. *Id.*

The landfill property was assessed for local real estate tax. The Authority asserted that as a municipal authority, it was immune from taxation or exempt from taxation since the property was being used for a public purpose. *Id.* The Berks County Board of Assessment Appeals rejected both claims. The Authority appealed that decision to the trial court. The trial court also rejected the immunity claim, but granted the Authority an exemption limited to the acres of land that were indispensable to the operation of the landfill. *Id.* The Commonwealth Court affirmed and the Authority appealed to our court. *Id.*

The court first explained that tax immunity is distinct from tax exemption and concluded that since a municipal authority, an independent agent of the Commonwealth, owned the property, an immunity analysis was proper. *Id.* at 531. The court explained that the right of immunity is not absolute and an agency cannot act outside "its authorized governmental purposes." *Id.* "For example, in *West View* [citation omitted], our court permitted taxation of property that was owned by a municipal authority" on "the portion of property owned by the municipal authority that was rented out to commercial concerns" since it found that the property was not exempt from taxation. *Id.* at 531–32. However, the court then explained that *West View* does not stand for the broad proposition that an immunity analysis did not apply to the Authority, since in that case the court relied on a statutory exemption analysis instead of an immunity analysis. "Instead, we read *West View*

as consistent with the proposition that property which is not acquired or used for authorized governmental purposes will not enjoy governmental immunity." *Id.* at 532.

The court applied this analysis to the Authority and concluded that the acquisition of land to operate a landfill was within the municipal authority's stated purposes and powers pursuant to 53 P.S. § 306. *Id.* "Thus, the Authority has not acted outside its authorized purposes or powers, and has not forfeited its tax immunity status." *Id.*

The court next addressed the Board's argument that neither immunity nor exemption could cover the excess acreage that was not essential to the operation of the landfill. The court rejected the idea that immunity is limited to the absolute minimum of property necessary to operate the landfill, since immunity covers the property acquired and used for an authorized purpose. *Id.* "Certainly, if it could be shown that this excess buffer land was acquired or used for some purpose other then the operation of a rubbish facility, then the scope of the immunity would be called into question. However, there was no evidence that this excess buffer zone was acquired or used for a purpose other than as part of the Landfill operation." *Id.* Accordingly, the court concluded that there was no basis to deny the Authority immunity from local taxation.

Appellees urge that the "public purpose" test set forth in *West View* provides the proper analysis in this case, since our opinion in *Delaware County* adopted this standard for tax immunity cases. We do not agree. Although as reflected in the discussion above, we did look at and even relied, in part, upon the decision in *West View* in reaching our conclusion in *Delaware County*, the opinion in *Delaware County* reflects that this court was well aware that the cases were different because of the exemption/immunity variation. In *Delaware County*, the court went to great lengths to explain the distinction between immunity and exemption, a task that was unnecessary if it was merely going to introduce the *West View* standard into the immunity context. Moreover, the court expressly noted that it could not merely import

the *West View* analysis in order to bar the Authority's immunity argument as *West View* involved a statutory exemption question. Thus, we did not adopt the test set forth in *West View* for purposes of immunity in *Delaware County*. Rather, we believe any reliance on *West View* was limited to the proposition "that property which is not acquired or used for authorized governmental purposes will not enjoy governmental immunity." *Delaware County*, 626 A.2d at 532.

On the other hand, SEPTA asserts that pursuant to the test set forth in *Delaware County*, the property is tax immune so long as the agency's action is "within its authorized purpose." In this case, SEPTA is authorized to lease and rent commercial property and thus, the property is tax immune.

■ We agree with SEPTA that the proper standard to review the question presented in this case is that set forth in *Delaware County*. Nevertheless, we do not agree with SEPTA's simplistic iteration of that test. Rather, pursuant to *Delaware County*, a court must first look at the broader question of whether the agency's action is within its "authorized purposes and powers." *Delaware County*. However, the inquiry does not end at that point. The court must also consider the scope of the immunity, i.e., whether the property was acquired or used for a purpose that is within the operation of the agency. In making this determination, the court must keep in mind that immunity is not limited to the absolute minimum of property necessary for operations. *See* discussion supra at 6; *Delaware County*, 626 A.2d at 532. Accordingly, we must now consider whether Appellees established that SEPTA acted outside of its authorized purpose or outside the scope of its immunity.[3]

■ In this case, SEPTA is a municipal authority created pursuant to 74 Pa.C.S. § 1711(a) to operate a metropolitan

---

**3.** Appellees do not contend that there is a specific statute that allows for taxation in this case; thus, the only avenue that would enable them to tax SEPTA is if SEPTA is acting outside its authorized purposes or outside the scope of its immunity.

transportation authority. Pursuant to this section, SEPTA "shall exercise the public powers of the Commonwealth as an agency and instrumentality thereof." Accordingly, SEPTA is part of the sovereignty of the Commonwealth and the property owned by SEPTA is presumed to be immune from taxation. *Delaware County, supra.*

■ Under the chapter that authorizes and organizes metropolitan transportation authorities, the transportation authority is given, inter alia, the following "rights, powers and duties":

> (12) To acquire by purchase, gift or otherwise, hold, lease as lessee and use any franchise, right or property, real, personal or mixed, tangible or intangible, or any interest or right therein necessary, desirable or useful for carrying out the purposes of the authority; *to sell, lease as lessor, transfer, dispose of or otherwise convey any franchise, right or property, real, personal or mixed, tangible or intangible, or any interest or right therein, at any time acquired by it;* or to exchange the same for other property or rights which are useful for its purposes.

> .    .    .    .    .

> (24) To explore alternative means of raising revenue or reducing expenses, including, **but not limited to, real estate leases and rentals,** equipment leases and rentals, contracting of services, the solicitation of competitive bids and the awarding of contracts to the highest responsive, responsible bidder for both interior and exterior advertising on all authority equipment on which the public is charged a fare for riding. . . .

74 Pa.C.S. § 1741(a)(12), (a)(24)(emphasis added). Thus, it is clear that the Legislature authorized SEPTA to lease real estate pursuant to these sections in order to "raise revenue" and "reduce expenses" and SEPTA's actions in leasing the excess property to commercial entities is within its "authorized purposes and powers." *Delaware County.*

As discussed *supra,* our inquiry does not end at this point; instead, we must also consider whether the use of the property is within the scope of SEPTA's immunity.[4] It does not necessarily follow that the leasing or renting of property to commercial entities is within the scope of the tax immunity granted to SEPTA merely because 74 Pa.C.S. § 1741(a)(24) authorizes SEPTA to take such action. Rather, § 1741(a)(24) in no way speaks to whether taxation of property that is leased to commercial entities is proper. While we are cognizant that tax immunity is not limited to the absolute minimum of property necessary for operations, we must still consider whether the excess property is used for SEPTA's operations. *Delaware County,* 626 A.2d at 532.

In *Delaware County,* we concluded that the excess property was immune from taxation since "there was no evidence that [the excess property] was acquired or used for some purpose other than as part of the Landfill operation." *Id.* The instant case is distinct from that confronting the court in *Delaware County,* since there is evidence that the excess property is being used for something "other than" as part of SEPTA's operation. Very simply, SEPTA is acting as a commercial landlord, which is clearly distinct from acting as a "metropolitan transportation authority" pursuant to 74 Pa.C.S. § 1711(a). We cannot agree with SEPTA's argument that because the excess property is being used to raise revenues and reduce SEPTA's expenses, such use is equivalent to being part of SEPTA's operations simply because the legislature "authorized" such action. Rather, we agree with the Commonwealth Court's conclusion that

> the purpose of SEPTA is to operate a transportation system in Southeastern Pennsylvania. While SEPTA is free to lease its real estate to tenants and is under the direction to raise revenue, clearly the leasing of real estate, solely to raise revenue, is not an activity connected to SEPTA's

4. In this case, the building at issue is owned by SEPTA and is used by SEPTA as its headquarters. There is no question that the portion of the building that is used by SEPTA for its operations is within the scope of SEPTA's immunity.

purpose. Therefore, SEPTA property leased to commercial tenants is not immune from taxation.

*SEPTA v. Board of Revision of Taxes et al.,* 777 A.2d at 1238.

There is no question that 74 Pa.C.S. § 1741(a)(12) and (24) encourages and authorizes SEPTA to raise revenues and thereby decrease expenses, which has the benefit of assisting the public at large in keeping public funding down. In fact, that is just what happened here, since SEPTA was able to raise additional revenue through rental income by entering into commercial leases with commercial entities. However, § 1741 does not provide a basis for concluding that in becoming a commercial landlord, SEPTA is absolved or exempted from its responsibility for paying real estate tax on the portion of the property that is utilized for such a commercial venture. In that respect, SEPTA is like any other commercial landlord with which it competes as a landlord.

Accordingly, for the reasons stated herein, we believe that the portion of SEPTA's property that is rented to commercial entities is not immune from taxation. The Order of the Commonwealth Court is affirmed.

Former Chief Justice Zappala did not participate in the decision of this case.

Mr. Justice NIGRO files a dissenting opinion.

Justice NIGRO, dissenting.

In my view, the majority's analysis confuses the legal standards relating to tax immunity and tax exemption, misinterprets *Delaware County Solid Waste Authority v. Berks County Board of Assessment Appeals,* 534 Pa. 81, 626 A.2d 528 (1993), and fails to accord adequate weight to the real estate leasing power specifically conferred on SEPTA by the General Assembly. I believe that a proper analysis, consistent with the legislature's apparent intent to remove "the impediment local taxation would represent to the successful operation of this distressed transportation system," *Southeastern Pa. Transp. Auth. v. Board for Assessment & Revision of Taxes,* 13 Pa.Cmwlth. 207, 319 A.2d 10, 13 (1974), compels the conclu-

sion that the property leased by SEPTA is immune from taxation.

The majority claims to reach its conclusion that SEPTA is not immune by clarifying, then applying, the legal standards governing tax immunity. Instead of clarifying these standards, however, the majority materially alters them, improperly blending those standards with the separate and distinct standards applicable in the tax exemption context. Specifically, although the majority properly states at the outset of its analysis that the "public purpose" test applicable in the tax exemption context has no place in an immunity analysis, op. 715, it then contradicts itself by adding a new consideration to the immunity analysis that is barely distinguishable from the "public purpose" test, that is, "whether the property was acquired or used for a purpose that is within the operation of the agency." Op. at 716. The majority appears to claim that this new consideration is mandated by *Delaware County*, yet the only discussion in that case regarding the use of the real estate in the agency's operations is sheer *dicta*. *See* 626 A.2d at 532 (stating that concerns regarding the public use of the property are not "implicated by the instant facts"). Indeed, had the requirement the majority announces today been applied in *Delaware County*, it would have compelled a different result, as the *Delaware County* court made clear that the real estate at issue in that case was not "acquired or used for a purpose that is within the operation of the agency." *See id.* at 530, 532 (stating that the real estate subjected to attempted taxation was "not essential" either to the agency's operations or to a required environmental buffer zone, but nevertheless holding that such real estate is immune). Accordingly, in my opinion, *Delaware County* plainly does not provide support for the majority's implementation of this new immunity constraint.

In truth, this Court's holding in *Delaware County* was clear and unmistakable: that immunity applies as long as the relevant government entity has not acted outside its "authorized purposes or powers." *See id.* at 532 ("In the present case, the acquisition of land to operate a landfill was within the

municipal authority's stated *purposes and powers....* Thus, the Authority has not acted outside its *authorized purposes or powers,* and has not forfeited its tax immunity status." (emphases added)); *see also id.* at 531 ("If an agency *acts outside its authorized governmental purposes,* then its immunity is not automatic." (emphasis added)); *id.* at 532 ("property which is not *acquired or used for authorized governmental purposes* will not enjoy governmental immunity;" "immunity covers property that was *acquired or used for an authorized purpose*" (emphases added)). Thus, the question in this case is simply whether SEPTA acted within its "authorized purposes or powers" when it leased its excess office space. *Id.* at 532. The answer is clearly yes, as the General Assembly has specifically empowered SEPTA to lease such real estate as a means to raise revenue and reduce expenses:

### § 1741. General powers

**(a) Powers enumerated.**—An authority *shall have and may exercise all powers necessary or convenient for the carrying out of the purposes of this chapter,* including the following rights, powers and duties:

\* \* \* \* \*

(12) To acquire by purchase, gift or otherwise, hold, lease as lessee and use any franchise, right or property, real, personal or mixed, tangible or intangible, or any interest or right therein necessary, desirable or useful for carrying out the purposes of the authority; to sell, *lease as lessor, transfer, dispose of or otherwise convey any franchise, right or property, real, personal or mixed,* tangible or intangible, or any interest or right therein, at any time acquired by it; or to exchange the same for other property or rights which are useful for its purposes.

\* \* \* \* \*

(24) *To explore alternative means of raising revenue or reducing expenses, including, but not limited to, real estate leases and rentals,* equipment leases and rentals, contracting of services, the solicitation of competitive bids

and the awarding of contracts to the highest responsive, responsible bidder for both interior and exterior advertising on all authority equipment on which the public is charged a fare for riding. . . .

74 Pa.C.S. § 1741 (emphases added).[1]

Therefore, as the General Assembly has specifically empowered SEPTA to lease real estate, and because such leasing carries out the authorized governmental purpose of raising revenue and reducing expenses, I would hold that the property leased by SEPTA is immune from taxation.[2] Accordingly, I respectfully dissent.

1. In addition to the direct authorization of SEPTA's leasing activities, it is also worth noting the General Assembly's general prohibition of local taxation of SEPTA, even though that prohibition appears to be applicable only in the exemption context. *See* 74 Pa.C.S. § 1781 ("such an authority shall not be required to pay any taxes or assessments of any kind or nature whatsoever, now in existence or to be enacted in the future, whether imposed by the Commonwealth or by any government agency upon any property or the income therefrom acquired or used or permitted to be used by an authority. . . ."); *cf. Delaware County Solid Waste Auth.*, 626 A.2d at 531 (quoting nearly identical exemption statute in now-repealed Municipal Authority Act, 53 P.S. § 318, and concluding that such language "evinces a legislative intent to reaffirm the long standing rule that property owned by a municipal authority should not be taxed").

2. Moreover, even assuming for the sake of argument that there is some sort of "public purpose" inquiry in the immunity analysis, I would find that SEPTA's leasing of real estate falls within its statutory purpose because the General Assembly has specifically included leasing within SEPTA's purpose and has broadly defined that purpose to include activities beyond SEPTA's core transit function. *See* 74 Pa.C.S. § 1711(a) ("An authority shall exist for the purpose of planning, acquiring, holding, constructing, improving, maintaining, operating, *leasing, either as lessor or lessee, and otherwise functioning with respect to a transportation system* in the metropolitan area and outside of such area, whether within or beyond the boundaries of this Commonwealth, to the extent necessary for the operation of an integrated transportation system. . . ." (emphasis added)).