IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Erie, and Erie City :
School District, :
 :
 Appellants :
 :
 v. : No. 1587 C.D. 2019
 : No. 1588 C.D. 2019
Erie County Board of Assessment : Argued: October 14, 2020
Appeals and Erie County Convention :
Center Authority :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge[1]
          HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  July 14, 2021


            City of Erie and Erie City School District (collectively, Taxing
Authorities) appeal the order of the Erie County Court of Common Pleas (trial
court) granting the summary judgment motion of the Erie County Board of
Assessment Appeals (Board) and Erie County Convention Center Authority
(Convention Authority) and finding that the Sheraton (Sheraton) and Courtyard by
Marriott (Courtyard) hotels (collectively, Hotels) and appurtenant parking garages

_____
            [1] This case was assigned to the opinion writer before January 4, 2021, when Judge
Leavitt served as President Judge.

owned by the Convention Authority are not subject to real estate taxation by the Taxing Authorities. We affirm.

Pursuant to Section 2399.4 of the Third Class County Convention Center Authority Act (Act),[2] the Convention Authority was created by County Ordinance No. 46-2000, enacted on April 25, 2000, and City Ordinance No. 22-2000, enacted on May 17, 2000. Section 2399.2 of the Act states that the Convention Authority "shall exist and operate as [a] public instrumentalit[y] of the Commonwealth for the public purpose of promoting, attracting, stimulating, developing and expanding business, industry, commerce and tourism[.]" 16 P.S. §2399.2.

Pursuant to Section 2399.52(d)(1) of the Third Class County Convention Center Authority Act (Alternative Provision) (Alternative Act),[3] the

---

[2] Act of August 9, 1955, P.L. 323, *as amended*, added by the Act of November 3, 1999, P.L. 461, 16 P.S. §2399.4. Section 2399.4 states, in relevant part:

> The governing bodies of a third class county and the political subdivision constituting the county seat . . . may create a body corporate and politic to be named the ……… County Convention Center Authority to be created as a public authority and government instrumentality. . . . The exercise by the authority of the powers conferred by this subdivision is hereby declared to be and shall for all purposes be deemed and held to be the performance of an essential public function.

[3] Added by the Act of October 18, 2000, P.L. 541, 16 P.S. §2399.52(d)(1). Section 2399.52(d)(1) of the Act states, in pertinent part:

> A county which has created (either individually or jointly with its county seat) a third class county convention center authority . . . after January 1, 2000, may opt to have such authority treated as having been organized under the provisions of this subdivision.

County opted to have the Convention Authority treated as if organized under that statute. Section 2399.55(a) of the Alternative Act states, in relevant part:

> (a) An authority created under this subdivision shall be a public body, corporate and politic, exercising public powers of the Commonwealth as an agency and instrumentality and shall be for the purpose, without limitation, by itself . . . of acquiring, holding, developing, designing, constructing, improving, maintaining, managing, operating, financing, furnishing, fixturing, equipping, repairing, . . . and owning convention center facilities, or parts thereof. Such convention center facilities need not comprise a single, integrated complex but may be located at one or more locations within the county and may function independently of one another.

16 P.S. §2399.55(a).

In turn, Section 2399.53 of the Alternative Act defines "'convention center' or 'convention center facilities,'" in pertinent part, as:

> [*A*]*ny land, improvement, structure, building, or part thereof,* or property interest therein, . . . owned by . . . an authority, *appropriate for any of the following*: large public assemblies, the holding of conventions, conferences, trade exhibitions and other business, social, cultural, scientific, sports, recreational, artistic and public interest events, performances and exhibitions, and all facilities, furniture, fixtures and equipment necessary and incident thereto, *including hotels, meeting rooms, dining rooms, kitchens, ballrooms, reception areas, registration and prefunction areas . . . and areas appurtenant to any of the preceding, and also including any other land, buildings, structures or facilities for use or planned for use in conjunction with the forgoing, including, but not limited to, . . . off-street parking . . . .*

16 P.S. §2399.53 (emphasis added).

Additionally, Section 2399.69 of the Alternative Act states, in relevant part:

3

The effectuation of the authorized purposes of authorities created under this subdivision shall and will be in all respects for the benefit of the people of this Commonwealth, for the increase of their commerce and prosperity and for the improvement of their health and living conditions; and since authorities, as public instrumentalities of the Commonwealth, will be performing essential governmental functions in effectuating these purposes, the authorities shall not be required to pay any taxes or assessments upon a convention center facility, or parts thereof, or property acquired or used or permitted to be used by them for these purposes[.]

16 P.S. §2399.69.

Pursuant to the foregoing, the Convention Authority built the Bayfront Convention Center (BCC) located on the shoreline of Presque Isle Bay, which opened on August 2, 2007. At the same time, the Convention Authority constructed the 200-room Sheraton, which opened in 2008. The Convention Authority also constructed the 192-room Courtyard, which opened in 2015.

From its inception, the plan for the BCC included an adjoining host hotel of at least 200 rooms as an essential component to the ultimate success of the convention center. For the 2016-2018 period, the Sheraton had an overall average occupancy rate of approximately 72.2%, and the Courtyard had an overall average occupancy rate of 64.2%. For that same period, the Sheraton had a Convention Authority venue-related occupancy rate of 49.2%, and the Courtyard has had a related occupancy rate of 36.4%. The estimated range of room occupancy for the Sheraton by guests who are affiliated with a Convention Authority event is between 34.19% to 49.2%, and for the Courtyard between 33.2% to 36.4%. The Convention Authority has stipulated that, to the extent that hotel rooms are not needed for people attending events at any of its properties, they are open to and are

4

rented by members of the general public. The trial court assumed that at least 63% of hotel occupancy is attributable to the general public.

On September 28, 2016, the Board sent a "Notice of Change of Assessment" to the Convention Authority regarding the tax-exempt status of the hotel properties. On November 3, 2016, the Convention Authority appealed the change of assessment challenging the hotel properties' taxable status, but not contesting the fair market values or assessments themselves. On December 12, 2016, the Board held a consolidated hearing on the appeals. On December 13, 2016, the Board issued a "Hearing Decision Notification" in which it did not change the amount of assessments, but granted each hotel property tax-exempt status.

On January 11, 2017, the Taxing Authorities appealed the Board's decision with respect to each of the hotel properties to the trial court. In the appeal, the Taxing Authorities argued that to the extent the Hotels rent rooms to the general public, and not to guests associated with the BCC venue, they are subject to taxation because the renting of rooms to the general public is not the purpose of the Convention Authority. The Convention Authority argued that its hotel properties are immune from taxation as a Commonwealth agency under Section 2399.55(a) of the Alternative Act, and exempt from taxation under Section 2399.69 of the Alternative Act.

The trial court granted the Convention Authority's motion for summary judgment. The trial court held:

> As in *Delaware* [*County Solid Waste Authority v. Berks County Board of Assessment Appeals*, 626 A.2d 528 (Pa. 1993) (*Delaware County*),] and *Reading* [*Housing Authority v. Board of Assessment Appeals of Berks County*, 103 A.3d 869 (Pa. 2014) (*Reading*)], the Hotels'

5

rooms rented to the general public cannot be viewed as a separate component of the Hotels' operations. They are a part of an integrated facility [the] functioning [of which] is consistent with the legislatively prescribed overall public purpose of a convention center authority. . . .

Here[,] having hotel rooms available for the general public serves the same purposes as having hotel rooms available to be rented by guests attending specific [Convention] Authority events. It's the availability of the rooms and related hotel facilities that further the [Convention] Authority's purpose of the promotion, attraction, stimulation, development and expansion of business, industry, commerce and tourism. In the end, there is nothing in the [Alternative] Act, its legislative history or in the case law that supports the notion that the [Convention] Authority's tax immunity is limited to the value of its Hotels as defined by usage from particular patrons. By renting its excess room capacity to the general public, the [Convention] Authority is engaging in activity that anyone operating a hotel would normally be expected to do. It is well within the authorized use of its property and consistent with its scope of operation.

Trial Court 10/11/19 Opinion at 17. The trial court distinguished *Southeastern Pennsylvania Transportation Authority (SEPTA) v. Board of Revision of Taxes*, 833 A.2d 710 (Pa. 2003) (*SEPTA*), explaining: "Here, as opposed to the facts in *SEPTA*, the [Convention] Authority through its ownership and operation of the Hotels is pursuing the very essence of its mission." Trial Court 10/11/19 Opinion at 14.

As a result, the trial court "conclude[d] that owning and operating the Hotels are directly related to the authorized public purposes of the [Convention] Authority and convention center facilities and therefore within the scope of the [Convention] Authority's immunity from taxation." Trial Court 10/11/19 Opinion at 18. Additionally, the trial court held that

6

owning and operating a hotel [are] a part of the [Convention] Authority's specified public purpose of owning and operating convention center facilities and the practice of renting its excess capacity to the general public does not diminish that purpose and therefore the [Convention] Authority is meeting the requirements of its statutory tax exemption.

*Id.* The Taxing Authorities then appealed the trial court's order to this Court, and we consolidated the appeals for disposition.[4]

On appeal, the Taxing Authorities assert that the trial court erred in granting summary judgment because both the concepts of tax immunity and tax exemption must consider the actual use of the property. In this case, the hotel properties should be partially taxed to the extent that their guests are not attending BCC-related events. The evidence showed that the Hotels are occupied by non-BCC patrons 63% of the time, so that 37% of the Hotels' usage is limited to Convention Authority events. The trial court interpreted the Convention Authority's enabling legislation too broadly because a hotel use is not within its operations as evidenced by the fact that it transferred all hotel management activities over to a third party. The trial court also violated the rules of statutory construction[5] in that it failed to distinguish between "convention centers" and

---

[4] "Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion." *Bay Harbor Marina Limited Partnership v. Erie County Board of Assessment Appeals*, 177 A.3d 406, 414 n.10 (Pa. Cmwlth. 2018) (citation omitted). "Summary judgment is proper only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law." *Id.*

[5] *See* Section 1921(a) and (b) of the Statutory Construction Act of 1972, 1 Pa. C.S. §1921(a), (b) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to **(Footnote continued on next page…)**

7

"convention center facilities" as defined in the Alternative Act, and these terms are not interchangeable. In sum, the Taxing Authorities argue that operating hotels is not a statutory purpose of the Convention Authority, and the trial court's interpretation of the provisions of the Alternative Act has led to an absurd result.[6] We do not agree.

As the Supreme Court has explained:

> The elementary premise underlying taxation is that the power to tax is exclusively vested within the legislature. "Property is immune from taxation if the taxing body has not been granted the authority to levy a tax." As a general matter, property owned by the Commonwealth and its agencies is immune from taxation by a local subdivision in the absence of express statutory authority. It cannot be presumed that general statutory provisions giving local subdivisions the power to tax local real estate, were meant to include property owned by the Commonwealth, since to allow such taxation would upset the orderly processes of government. Thus, in order to tax property owned by the Commonwealth, a local subdivision must establish that it has the authority to tax such property.

*SEPTA*, 833 A.2d at 713 (citations omitted).

Moreover, as this Court has observed:

---

**(continued…)**

give effect to all its provisions," and "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

[6] In this regard, the Taxing Authorities' reliance on *Pennsylvania State System of Higher Education v. Indiana Area School District* (Pa. Cmwlth., No. 184 M.D. 2011, filed April 5, 2012), *aff'd per curiam*, 69 A.3d 236 (Pa. 2013), is misplaced because our opinion in that matter was later overruled in *Indiana University of Pennsylvania v. Jefferson County Board of Assessment Appeals*, 243 A.3d 745, 754 n.12 (Pa. Cmwlth. 2020).

In determining whether a municipal authority has forfeited its tax immunity status, a court must employ what has become known as the "public-use" test. It provides that, "a court must first look at the broader question of whether the agency's action is within its 'authorized purposes and powers.'" [*SEPTA*, 833 A.2d at 716]. In addition, the court must also consider the scope of the immunity, *i.e.*, whether the property was acquired or used for a purpose that is within the operation of the agency. In making this determination, the court must keep in mind that immunity is not limited to the absolute minimum of property necessary for operations

*Reading*, 103 A.3d at 872-73.

As outlined above, pursuant to the provisions of Section 2399.53 of the Alternative Act, the operation of the hotels falls within the broad definition of "'convention center' or 'convention center facilities,'" such that rental of rooms to the general public does not fall outside of the core functions of this "Commonwealth agency and instrumentality" as provided in the Act and the Alternative Act. As noted by the trial court, and contrary to the Taxing Authorities' assertion, there is no distinction made within the statutory definition of "'convention center' or 'convention center facilities,'" and we will not insert language into the Alternative Act to create one. *See, e.g.*, *Commonwealth ex rel. Fox v. Swing*, 186 A.2d 24, 27 (Pa. 1962) ("It is not for us to legislate or by interpretation to add to legislation matters which the legislature saw fit not to include.").

In *SEPTA*, the Supreme Court quoted this Court in explaining that

the [statutory] purpose of SEPTA is to operate a transportation system in Southeastern Pennsylvania. While SEPTA is free to lease its real estate to tenants and is under the direction to raise revenue, clearly the leasing of real estate, solely to raise revenue, is not an activity connected to SEPTA's purpose. Therefore, SEPTA

9

> property leased to commercial tenants is not immune from taxation.

*SEPTA*, 833 A.2d at 717 (citation omitted). That is why the Supreme Court determined:

> There is no question that [Section 1741(a)(12) and (24) of the of the Public Transportation Law,] 74 Pa. C.S. §1741(a)(12) and (24)[,] encourages and authorizes SEPTA to raise revenues and thereby decrease expenses, which has the benefit of assisting the public at large in keeping public funding down. In fact, that is just what happened here, since SEPTA was able to raise additional revenue through rental income by entering into commercial leases with commercial entities. However, [Section] 1741 does not provide a basis for concluding that in becoming a commercial landlord, SEPTA is absolved or exempted from its responsibility for paying real estate tax on the portion of the property that is utilized for such a commercial venture. In that respect, SEPTA is like any other commercial landlord with which it competes as a landlord.

*Id.*

By contrast, in *Delaware County*, the entire tract of land acquired by a municipal solid waste authority from a private entity (R.R.M.) to operate a landfill, including land used as a buffer, was within the municipal solid waste authority's enumerated purposes and powers set forth in the former Section 306(a)(7) of the Municipal Authorities Act of 1945.[7] The Supreme Court found that "the fact that the landfill was operated through the R.R.M. corporate vehicle did not alter the fact that the [a]uthority controlled R.R.M., owned the land, and operated the site. As such, we find that there is no basis to deny the [a]uthority immunity from local taxes for the property in this case." *Delaware County*, 626 A.2d at 533.

---

[7] Act of May 2, 1945, P.L. 382, *as amended*, *formerly* 53 P.S. §306(a)(7), repealed by the Act of June 19, 2001, P.L. 237.

10

Accordingly, "[i]n *Delaware County*, [the Supreme Court] concluded that the excess property was immune from taxation since 'there was no evidence that [the excess property] was acquired or used for some purpose other than as part of the [statutorily-authorized l]andfill operation.' [*Id.*] at 532." *SEPTA*, 833 A.2d at 717.

Likewise, in *Reading*, with respect to the tax immunity of the 80% of market-rate housing units that were interspersed with the 20% of low-income subsidized units in the property owned by the Reading Housing Authority (RHA), this Court observed:

> [T]he market-rate units cannot be viewed in isolation. Both the market-rate and public units form an integrated whole and, pursuant to the findings of fact, the former are critical to the success of the latter. Specifically, the fact-findings indicate that the market-rate units were essential to obtaining the financing needed for the property to be constructed, including the public units, and the RHA issued bonds guaranteed by [the United States Department of Housing and Urban Development]. In addition, the role of the market-rate units in the comprehensive housing scheme is consistent with and tied to the purposes of the RHA. As we noted above, one of the RHA's authorized purposes under Section 2 of the Housing Authorities Law[8] is "the providing of safe and sanitary dwelling accommodations for persons of low income through new construction . . . so as to prevent recurrence of the economically and socially disastrous conditions hereinbefore described. . . ." Here, the commingling of tenants of varying incomes, made possible by the inclusion of market-rate units, is an essential component of the permissible mixed-use project.

*Reading*, 103 A.3d at 875.

---

[8] Act of May 28, 1937, P.L. 955, *as amended*, 35 P.S. §1542.

Thus, as in *Reading* and *Delaware County*, the commingling of the general public's use of the Sheraton and Courtyard hotel rooms with those used for BCC-related functions in no way affects the immunity of the Convention Authority's hotel properties herein. All such uses are a necessary and essential component of, and directly tied to, the Convention Authority's statutory purpose as set forth in the Act and the Alternative Act "for the public purpose of promoting, attracting, stimulating, developing and expanding business, industry, commerce and tourism[,]" and "of acquiring, holding, developing, designing, constructing, improving, maintaining, managing, operating, financing, furnishing, fixturing, equipping, repairing, . . . and owning convention center facilities, or parts thereof," because the statutory definition of "convention center facilities" specifically includes "any land, improvement, structure, building, or part thereof, or property interest therein, . . . owned by . . . an authority, . . . ***and all facilities, furniture, fixtures and equipment necessary and incident thereto, including hotels . . . .***" 16 P.S. §§2399.2, 2399.53, 2399.55(a) (emphasis added). In sum, the trial court did not commit an error of law or an abuse of discretion in granting summary judgment in this matter.[9]

---

[9] Moreover, in the alternative, with respect to the exemption for the Convention Authority's hotel properties from taxation, Article 8, Section 2(a)(iii) of the Pennsylvania Constitution states: "The General Assembly may by law exempt from taxation . . . [t]hat portion of public property which is actually and regularly used for public purposes." Pa. Const. art. VIII, §2(a)(iii). *See also* Pa. Const. art. VIII, §5 ("All laws exempting property from taxation, other than the property above enumerated, shall be void."). The Convention Authority must first demonstrate that the hotel properties meet the constitutional definition before we may examine whether the statutory exemption in the Alternative Act applies. *Community Options, Inc. v. Board of Property Assessment*, 813 A.2d 680, 683 (Pa. 2002). This "is a mixed question of law and fact on which the trial court's decision is binding absent an abuse of discretion or lack of supporting evidence." *Id.* (citation omitted). Thus, to the extent that the hotel properties are not immune from taxation, they are clearly exempt from taxation under Section 2399.69 of the **(Footnote continued on next page…)**

Accordingly, the trial court's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

_____
**(continued…)**

Alternative Act, as all of the property in question "is actually and regularly used for the public purposes" of the Convention Authority outlined in the foregoing provisions of the Act and the Alternative Act.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Erie, and Erie City      :
School District,         :
              :
        Appellants   :
              :
      v.        : No. 1587 C.D. 2019
             : No. 1588 C.D. 2019
Erie County Board of Assessment   :
Appeals and Erie County Convention   :
Center Authority        :

# **O R D E R**

AND NOW, this 14th day of July, 2021, the order of the Erie County Court of Common Pleas dated October 11, 2019, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge