## NORWEGIAN TOWNSHIP

#### v.

## SCHUYLKILL COUNTY BOARD OF ASSESSMENT APPEALS, Pottsville Area School District

### Appeal of: Schuylkill County Board of Assessment Appeals.

Commonwealth Court of Pennsylvania.

Argued June 19, 2013.
Decided Aug. 12, 2013.

---

6. Section 102 of the Act, Act of March 20, 2002, P.L. 154, *as amended*, 40 P.S. § 102.

Glenn T. Roth, Jr., Pottsville, for appellant.

Eric M. Prock, Pottsville, for appellee Norwegian Township.

BEFORE: PELLEGRINI, President Judge, McGINLEY, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge McCULLOUGH.

The Board of Assessment Appeals of Schuylkill County (Board) appeals the August 28, 2012 order of the Court of Common Pleas of Schuylkill County (trial court) reversing the decision of the Board and determining that the property owned by Norwegian Township (Township) bearing Tax Parcel No. 20–06–0027 (Property) is exempt from real estate taxes. We affirm.

*Background*

On August 6, 2007, Community Banks, N.A. (Community Banks) transferred the Property to the Township for $1.00. (Reproduced Record (R.R.) at 31a.) On March 1, 2012, Schuylkill County sent a notice to the Township notifying the Township of municipal/county and school district tax liability for the Property. (*Id.*) The Township appealed to the Board, which held a hearing on May 8, 2012. (R.R. at 52a.) By order dated May 9, 2012, the Board affirmed its tax assessment of the

Property based on fair market value. (*Id.*) On June 8, 2012, the Township appealed the tax assessment of the Board to the trial court challenging the Property's tax-exempt status.

On July 12, 2012, the trial court held a hearing on the Township's tax assessment appeal. The parties stipulated to and the Board admitted the tax record card reflecting the Property's assessed fair market value of $49,010.00. (Notes of Testimony (N.T.) at 3–4; R.R. at 31a.)

Leo John Grace (Grace), a supervisor and clerk for the Township, testified that Community Banks transferred the Property to the Township in 2007. Grace testified that the Township applied for grant money in 2007, and has been unsuccessfully applying ever since, to build a playground on the Property, but no funds were or are available. (N.T. at 5–6.) Grace stated that "since there is no grant money available ... we've been cleaning it and cutting trees, and we're going to put some park benches in there, people from [the Township] can actually go sit until [grant] money does become available." (N.T. at 6.) Grace added that the Township has also removed debris from the Property. (N.T. at 6–7.)

Grace further testified that there is complete access to the Property "for about ... three quarters of it, of the [P]roperty, and we plan on doing the rest." (N.T. at 7.) Grace stated that the Property is included in the Township's maintenance program to cut the grass and clean up after storms "maybe three times a month, same as [the Township does] with the [other] playgrounds." (*Id.*) Lastly, Grace asserted that the Township has applied for grants "several times through Amtek Engineering" and has spent thousands of dollars to

make the Property open for public use. (N.T. at 17.) At the conclusion of the hearing, the trial court kept the record open for the Township to submit photographs of the Property. (N.T. at 21–22.)

By opinion and order dated August 28, 2012, the trial court held that the Property was exempt from real estate taxes. The trial court noted that, while the burden for establishing tax exemption is usually on the taxpayer under the general rule that all real estate is taxable, the taxing authority has the burden of proof when establishing tax liability for government-owned property. Relying on *Granville Township v. Board of Assessment Appeals of Mifflin County*, 900 A.2d 1012 (Pa.Cmwlth.2006), the trial court stated that property acquired by a township is presumed to be immune from taxation unless there is evidence presented that the property is being used for a non-governmental purpose. The trial court also stated that, under *Senior Citizen Health Care Council v. Board of Tax Assessment Appeals of Erie County*, 678 A.2d 430 (Pa.Cmwlth.1996), if a township has made a good-faith effort to develop a property it owns for its intended use, then the property is tax-exempt. (Trial court op. at 1–3.)

The trial court determined that the Property was tax-exempt under Article VIII, section 2 of the Pennsylvania Constitution [1] and section 8812 of the Consolidated County Assessment Law (Law),[2] which authorize the exemption of public property used for public purposes from taxation. (Trial court op. at 2–3, 5–6.) The trial court concluded as follows:

> If the Township is currently using the property for public purposes then the property is tax exempt. Also if the Township has made a good faith effort

---

1. Pa. Const. art. VIII, § 2.

2. Act of October 27, 2010, P.L. 895, *as amended,* 53 Pa.C.S. § 8812.

to commence developing the property for its intended use then the property would be tax exempt. See *Senior Citizen Health Care Council.* The testimony of Mr. Grace shows that the township purchased the property to be used as a park and/or playground. The Township's efforts to create the park and/or playground have been slow because the Township has not been able to secure grant funding to help them pay for the development of the park and/or playground.

Without the grant funding, the land has not been able to be fully developed as a park and/or playground. However, *the land is still an area for residents to use for recreational activities.* With benches being added to the land it will be more apparent to Township [sic] residents that the property is available to members of the public. As *testified to by Mr. Grace the location of the land makes it a good area for residents to use, to walk their dogs or for any other recreational activities.*

Even if the Township [sic] efforts to build a playground or park have been delayed because of a lack of funding *there is no evidence to suggest that the land in question has been used for a non-public purpose.* Under these circumstances, taxation of the property is neither compelled nor intended by the Pennsylvania Constitution or the County Assessment Law. The *land is available to the public for recreational activities and we believe that the land has been*

*used by the Township to benefit the public.* We also believe that the *township has made a good faith effort* [to] develop the land to be used as a park and/or playground.

(Trial court op. at 5–6.) (emphasis added.)

■■ On appeal,[3] the Board argues that the trial court erred in determining that the Board bears the burden of proving that the Township is not using the Property for a public purpose and therefore the Property is taxable. The Board asserts that the trial court erred in concluding that the Property is tax-exempt because: (1) the Township is not actively and currently using the Property for public purposes; (2) the Township merely "intends" to use the Property as a public park and/or playground and has not begun construction or expended significant sums of money towards this development; (3) the Township does not have the necessary funds to develop the Property for public purposes; and (4) the Township has failed to install improvements to the Property or notify its residents that the Property is available for public use as a park and/or playground.

### Discussion

#### Burden of Proof

■■ Initially, we must determine whether the trial court erred in placing the burden of proof on the Board to show that the Property is not used for a public purpose, and, thus, subject to taxation. Usu-

---

**3.** Our scope of review in a tax assessment appeal is limited to determining whether the trial court abused its discretion or committed an error of law and whether the decision is supported by the requisite evidence. *Granville,* 900 A.2d at 1014. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Church of the Overcomer v. Delaware County Board of Assessment Appeals,* 18

A.3d 386, 388–89 n. 1 (Pa.Cmwlth.2011). Whether property is tax-exempt or immune from taxation is a question of law; our standard of review is *de novo* and our scope of review is plenary. *Southeastern Pennsylvania Transportation Authority (SEPTA) v. Board of Revision of Taxes,* 574 Pa. 707, 712, 833 A.2d 710, 713 (2003); *see also Granville,* 900 A.2d at 1014.

ally, the taxpayer bears the burden of establishing a tax exemption under the rule that all property is subject to real estate taxes. *In re Borough of Riegelsville from Bucks County Board of Assessment and Revision of Taxes*, 979 A.2d 399, 403 (Pa.Cmwlth.2009). Generally, the taxing authority's admission of the tax assessment record into evidence establishes a *prima facie* case for taxability, and it is the taxpayer's burden to overcome the validity of the tax assessment with competent, relevant evidence. *Gitney v. Berks County Board of Assessment Appeals*, 160 Pa.Cmwlth. 647, 635 A.2d 737, 741 (1993). However, "[t]he burden of proof of liability for taxes is on the taxing authority where the real estate in question is owned by a governmental body." *Granville*, 900 A.2d at 1016; *see also In re Borough of Riegelsville*, 979 A.2d at 403.

The general rule that government-owned property is presumed tax-immune has a long historical basis in our case law. As our Supreme Court held in *Directors of the Poor of Schuylkill County v. School Directors of North Manheim Township*, 42 Pa. 21 (1862):

> If we require the townships, counties, towns, cities, and state, and the road, school, and poor authorities, to tax each other, we shall furnish fees enough for several hundred officers engaged in transferring from one public body to another the taxes which it has collected for its public purposes ... Surely it is not too much to say this is absurd. The public is never subject to tax laws, and no portion of it can be without express statute. No exemption law is needed for any public property, held as such.

*Id.* at 25.

In *Granville*, the court, in considering *Directors of the Poor of Schuylkill County* and the history of the taxability of government-owned property, stated, "[t]he con-

cept of the tax immunity of public property has survived constitutional and statutory revisions; what has changed is how it is applied and under what terms." *Granville*, 900 A.2d at 1016.

Relying on *Guilford Water Authority v. Adams County Board of Assessment*, 131 Pa.Cmwlth. 255, 570 A.2d 102 (1990), the Board argues that the trial court erred by placing the burden on the Board to prove the Township's tax liability for the Property. However, the Board's reliance on *Guilford* is misplaced. *Guilford* involved an appeal by Guilford Water Authority, a municipal authority, from a decision denying its claim for a real estate tax exemption. We held that Guilford Water Authority, the taxpayer, had the burden to prove tax-exempt status. *Id.* at 103 n. 2. In doing so, we relied upon *Appeal of Pittsburgh Institute of Aeronautics*, 435 Pa. 618, 258 A.2d 850 (1969), which is distinguishable from the present case.

■ In *Appeal of Pittsburgh Institute of Aeronautics*, the Pittsburgh Institute of Aeronautics (PIA), a non-profit corporation, claimed to be exempt from taxes as a purely public charity. In that case, our Supreme Court noted that a taxpayer claiming a tax exemption bears the burden to prove tax-exempt status. *Id.* at 622, 258 A.2d at 852. However, property owned by non-profit corporations, such as PIA, is not entitled to the same presumption of tax immunity or tax exemption as is government-owned property, such as that owned by the municipal authority in *Guilford*. In deciding *Guilford*, we failed to consider this important distinction and misstated the appropriate burden of proof for government-owned property.

■ The Board's further reliance on *Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 487 A.2d 1306 (1985), to demonstrate that the burden of proof for

tax exemption lies with the taxpayer is also misplaced for similar reasons. In *Hospital Utilization Project,* the taxpayer, like the taxpayer in *Appeal of Pittsburgh Institute of Aeronautics,* contended that it had tax-exempt status because it was a public charity. Similar to cases involving non-profit corporations, the burden is on the taxpayer seeking exemption as a public charity to prove its entitlement to tax-exempt status. *Hospital Utilization Project,* 507 Pa. at 13, 487 A.2d at 1312. However, as previously observed, such is not the case with government-owned property, and the court's conclusion of the burden of proof in *Hospital Utilization Project* is inapplicable to the present case. Further, the exemption at issue in *Hospital Utilization Project* was for sales and use tax, which is not at issue here.

Indeed, a progeny of cases decided after *Guilford* have held that municipal authorities, including townships, are extensions of the Commonwealth, and, thus, property owned by these entities is presumptively non-taxable. *Lehigh–Northampton Airport Authority v. Lehigh County Board of Assessment,* 585 Pa. 657, 674–75, 889 A.2d 1168, 1179 (2005) ("[P]roperty owned by a Commonwealth governmental agency is presumed immune, and the taxing body bears the burden of proving any limitation of the scope of the agency's immunity relative to an individual parcel of property that it wishes to tax."); *In re Borough of Riegelsville,* 979 A.2d at 403 ("The burden of proof for establishing the tax liability of a government-owned property lies with the taxing authority."); *Granville,* 900 A.2d at 1016 ("[T]he burden of proof of liability for taxes is on the taxing authority where the real estate in question is owned by a governmental body."); *Dauphin County General Authority v. Dauphin County Board of Assessments,* 768 A.2d 895, 898 (Pa. Cmwlth.2000) (Property owned by a municipal authority which is primarily and

principally used "for a public purpose" is exempt from taxation). Thus, the Board's reliance on *Guilford* is misplaced.

The Board's reliance on *In re Township of Middletown,* 654 A.2d 195 (Pa.Cmwlth. 1995), is similarly misplaced. In that case, we held that the burden was on a township to prove that property it owned was tax-exempt. However, in doing so, we relied on *Lehigh Valley Cooperative Farmers v. Bureau of Employment Security, Department of Labor and Industry,* 498 Pa. 521, 447 A.2d 948 (1982), a case involving a cooperative agricultural association claiming tax exemption from paying unemployment compensation taxes. As in *Guilford,* in *In re Township of Middletown,* the court misplaced the burden of proof in a government-owned property context on the taxpayer by mistakenly borrowing a principle from a case that did not involve government-owned property.

Further, in *In re Township of Middletown,* this Court also declined to extend tax immunity to townships, as we determined that a municipality was neither the Commonwealth nor one of its agencies. However, this court in *In re Township of Middletown* failed to cite any authority for its conclusion, and subsequent cases from both this Court and our Supreme Court have held otherwise. *See Lehigh–Northampton Airport Authority; In re Borough of Riegelsville; Granville; Dauphin County General Authority.*

While the dissent chooses to ignore "which party has the burden of proof or what has been decided in other cases," (Dissent op. at 1136), a discussion of these issues is necessary to the outcome of this case. In this regard, we conclude that the present case is controlled by our decision in *Granville,* which cited the reasoning of our Supreme Court in *Lehigh–Northampton Airport Authority.* In *Lehigh–North-*

*ampton Airport Authority,* the Supreme Court affirmed "decades of precedent" in this Commonwealth holding that municipal authorities created under the Municipality Authorities Act[4] are agencies of the Commonwealth. 585 Pa. at 672, 889 A.2d at 1177. The court further noted that property owned by the Commonwealth is presumed to be immune from taxation and that the taxing authority bears the burden of proving the property's taxability. *Id.* at 675, 889 A.2d at 1179. In *Granville,* we applied the reasoning of *Lehigh–Northampton Airport Authority* to property owned by a township and held that a township is a governmental body whose property is presumed to be immune or exempt from tax. We noted in *Granville* that decisions addressing the taxability of public property use the terms immunity and exemption almost interchangeably and that the failure to recognize that different principles may be at work in different cases has added to the confusion in these types of cases. Nevertheless, we reiterated that "the burden of proof of liability for taxes is on the taxing authority where the real estate in question is owned by a governmental body." *Granville,* 900 A.2d at 1016. Thus, the trial court properly relied on *Granville* to conclude that the Board bore the burden to prove that the Property is subject to taxation.

### Public Use

The basis for tax exemption of public property is found in Article VIII, section 2 of the Pennsylvania Constitution and in section 8812 of the Law. In relevant part, Article VIII, section 2 of the Pennsylvania Constitution states:

(a) The General Assembly may by law exempt from taxation:

(iii) That portion of public property which is actually and regularly used for public purposes.

PA. CONST. art. VIII, § 2. Section 8812 of the Law states further:

(a) **General rule.**—The following property shall be exempt from all county, city, borough, town, township, road, poor, county institution district and school real estate taxes:

(8) All other public property used for public purposes with the ground annexed and necessary for the occupancy and use of the property. . . .

53 Pa.C.S. § 8812(a)(8).

In *SEPTA,* our Supreme Court described two distinct analyses; one used to determine whether a property is tax-immune and the other used to determine whether a property is tax-exempt. 574 Pa. at 712, 833 A.2d at 713. However, similar to our decision in *Granville,* the Supreme Court observed that courts within the Commonwealth have used the terms "immunity" and "exemption" interchangeably. *Id.* As we noted in *Granville,* the distinction between tax immunity and tax exemption is unnecessary in the context of government-owned property. 900 A.2d at 1016 n. 3. Whether either term is used, government-owned property is not taxable if it is being used for a public purpose, and the taxing authority bears the burden to prove its taxability. *Id.* at 1016. Stated otherwise, the taxing authority must prove that the government-owned property is not being used for a governmental purpose in order for the property to be taxable.

Moreover, the current use of the property, and not an indefinite, prospective use, controls in the court's determination of tax exemption. *Appeal of Municipal Authority of Borough of West*

---

4. Act of May 2, 1945, P.L. 382, *as amended.* 53 P.S. §§ 301–322. The act was recodified and replaced by the Act of June 19, 2001, P.L. 287, *as amended,* 53 Pa.C.S. §§ 5601–5623.

*View*, 381 Pa. 416, 422, 113 A.2d 307, 310 (1955). A taxpayer may overcome speculative use of a property by proving that it spent sufficient funds towards the development of the property for public use. *Senior Citizen*, 678 A.2d at 432. In *Senior Citizen*, the taxpayer, a non-profit corporation, requested a real estate tax exemption for its property, which was denied by the Board of Tax Assessment Appeals of Erie County because the taxpayer was not currently occupying the property such that the premises was for the use and enjoyment of the taxpayer at the time of the tax assessment. The trial court reversed the Board of Tax Assessment Appeals of Erie County's order, holding that "a good faith effort to commence developing [a] project for its intended use would entitle the applicant to the tax exemption" under the construction standard in *Overmont Corp. v. Board of Tax Revision*, 479 Pa. 249, 251, 388 A.2d 311, 312 (1978) (holding that "when a charity is constructing facilities, that charity is 'using' its property for charitable purposes so as to come within the scope of the General County Assessment Law.") *Senior Citizen*, 678 A.2d at 431.

On appeal, we held that, based on the taxpayer's evidence of obtaining renovation plans after hiring an architect and soliciting bids, the taxpayer expended sufficient funds to meet the "construction" standard in *Overmont*. Although the taxpayer in *Senior Citizen* was a non-profit corporation and not a governmental entity, we view the holding in *Senior Citizen* as adding another obstacle that the taxing authority must overcome in proving that a government-owned property is not being used for a public or governmental purpose.

The Board argues that the trial court erred in concluding that the Property is actually and regularly being used for a public purpose. PA. CONST. art. VIII, § 2. The Board further contends that the

Township's use of the Property as a park is merely prospective because: (1) the Township has not begun construction or expended significant sums of money towards this development; (2) the Township does not have the necessary funds to develop the Property for public purposes; and (3) the Township has not installed improvements to the Property or notified its residents that the Property is available for public use as a park and/or playground.

■ However, there is substantial evidence in the record to support the trial court's conclusion that the Board failed to meet its burden to prove the taxability of the Property. The sole evidence that the Board placed into the record is the tax assessment record card and a picture of the Property, establishing only that the Property is currently vacant. (R.R. at 31a–32a.)

■ As section 2 of the Pennsylvania Constitution states, public property that is "actually and regularly used for public purposes" is tax-exempt. PA. CONST. art. VIII, § 2. Being actually and regularly used by the public is not the sole factor in considering whether the Property is being used for public purposes. *Lehigh–Northampton Airport Authority*, 585 Pa. at 676, 889 A.2d at 1179–80 (holding that a governmental entity is entitled to complete immunity from taxation as long as it acts within the scope of its granted powers); *SEPTA*, 574 Pa. at 717, 833 A.2d at 716 (noting that the courts must "consider the scope of the immunity, i.e., whether the property was acquired or used for a purpose that is within the operation of the agency"); *Senior Citizen* (holding that a good-faith effort to develop a property, including the expenditure of funds, qualifies that property for a tax exemption).

Notwithstanding that the burden is on the taxing authority to establish the taxability of the Property, the Township pro-

duced ample evidence through the testimony of Grace to show that the Property is actually and regularly being used for a public purpose and to support the trial court's finding that the Property is available to the public for recreational activities, has been used by the Township to benefit the public, and that the Township has made a good-faith effort to develop the land for a park or playground. Grace testified that the Township has been maintaining and cleaning the Property, including cutting trees and picking up debris, and is in the process of using the Township's funds to place park benches on the Property. Grace further testified that the public has complete access to 3/4 of the Property, the Township includes the Property in its regularly scheduled maintenance plan, the Township has announced at public meetings that the Property is available for public use, and the Township has used the Property for public purposes. (N.T. at 6–8, 10–11.) Specifically, Grace testified as follows:

> Q. Okay. And how often do you actually send crews up there to clean the property for the public?
> A. Whenever it needs grass cutting or whatever, and, you know, if it ever storms or anything, we send them up.
> Q. That's usually a couple of times a month?
> A. Maybe three times a month, same as we do with the playgrounds.
> Q. So you basically have a maintenance program for this particular property, the same as you do for your—the full playgrounds you have in the Township?
> A. Yes, we do.

(N.T. at 7.)

Contrary to the dissent's assertion, Grace did not "clearly concede[ ] the property was *not* currently being used by the public." (Dissent op. at 1136–37.) This "concession" by Grace is taken out of context. Grace's testimony is clearly about park benches, and not an admission that the Property is not currently being used by the public. Specifically, Grace testified as follows:

### Direct Examination

Q. And is it, um, is it the Township's, Norwegian Township's, position that *currently* the property is *being used for public purpose?*

A. *Yes,* we definitely need to add some benches there. And we will do that, we'll order them and we'll have that done. We're trying to get grant money, which hasn't happened.

Q. And you've been trying since 2007, right?

A. Yes.

\* \* \*

### Cross–Examination

Q. Just to clarify, what—what is the current public purpose for the property?

A. Right now it's just, uh, really, we're gonna [sic] put some benches there, and then they'll be able to go there at night and sit or whatever because a lot of older people there [sic] in that area, just a place for them to go.

Right now it's—we've had it clean, and we're trying to get [grant] money, which I don't think we're gonna [sic] get, so we're going to spend Township funds for some benches and park benches, maybe, for it.

Q. When do you expect to spend the money?

A. We can do it by the end of August as long as we get the benches in.

Q. Is it currently being used by the public?

A. No.

Q. All right.

A. No, no, there's no—there's—*there's no bench or anything for them to sit.*

Q. Is there any sign that's indicating that it's a public park?

A. No, *the entrance of Norwegian Woods is there,* and I'm sure we can put some signs up.

We're—our first intent was to put a playground there, but we're definitely not going to get money for that. And that's very expensive to put a new playground there. So until that money becomes available, we'll put some benches there and mark it for community use.

\* \* \*

*Redirect Examination*

Q. *The public has unfettered access to that property,* right?

A. Oh, sure.

Q. And, and—

A. *It's not gaited* [sic] *or anything.*

Q. And there's nothing to prohibit them from using it?

A. No, nothing at all.

\* \* \*

*Re–Redirect Examination*

Q. Let me just follow up on that to clear [the Board's attorney] and the Judge's, maybe, issue. Am I correct that at multiple public meetings since 2007 when this was transferred to you, and then the fact was that when the Community Banks was present, it was announced at the public meeting contained within the minutes that this was going—that the—the true intention is to—

A. Yes.

Q. —use this property—

A. Yes.

Q. —*for public purpose?*

A. *Yes. And it has been.*

Q. So it's not like, you know, this is—you're telling the Judge something that you haven't been, um, announcing to the public for the last three years—

A. It's done at public meetings, but there's no signings [sic] to show it. When it has been—every time we applied for a grant, it's brought up at a public meeting.

(N.T. at 7–11.) (emphasis added.) In sum, Grace testified that the Township has the same maintenance program for the Property as the full playgrounds, the Property is at the entrance to Norwegian Woods, the public has unfettered access, it is not gated, there is nothing prohibiting the public from using it, and every time the Township applies for grant money it is brought up at a public meeting.

▇▇▇ Although Grace's testimony focuses on installing benches to further accommodate the public, this does not negate the public purpose use or maintenance of the Property. Further, the applicable burden of proof which the Board must meet governs the outcome of this case, which is not merely whether park benches have been placed on the Property. The Property is tax-immune/exempt unless it is not used for a governmental purpose.

▇▇▇ Moreover, the constitutional standard is that the property be used *for* public purposes, not *by* the public, PA. CONST. art. VIII, § 2, and, as noted above, whether a property is tax-immune/exempt is a question of law. *SEPTA,* 574 Pa. at 712, 833 A.2d at 713 (2003); *Granville,* 900 A.2d at 1014. Further, we must be careful to observe the statutory language and the Supreme Court's caution in *Directors of the Poor of Schuylkill County* that "[t]he public is never subject to tax laws, and no portion of it can be without express statute." 42 Pa. at 25. While the dissent notes that the trial court did not explicitly

hold that the Township "actually and regularly used" the Property, (Dissent op. at 1137), the standard is, "regularly and actually used for public purposes," which was established here. The trial court clearly held that the Property is available to the public for recreational activities, has been used by the Township to benefit the public, and that taxation of the Property is neither compelled nor intended by the Pennsylvania Constitution or the Law. Moreover, the trial court concluded that the Property is tax-exempt and such a conclusion cannot be reached unless the Township is "currently using the Property for public purposes." (Trial court op. at 1, 5–6.) Thus, the trial court concluded that the Township is using the Property for a public benefit and that the Board failed to prove otherwise.

The trial court further held that the Township has made a good-faith effort to develop the land to be used as a park or playground. It noted Grace's testimony that the Township has spent money to clear and maintain the site and attempt to secure grant money to transform the Property into a playground. Specifically, Grace testified as follows:

Q. So—so you've actually *spent* probably *thousands of dollars* to try to create a public property up there between Amtek Engineering as of the cause to, um, to have those people come out there and clean it.

A. Right, there are workers that do that.

(N.T. at 17.) (emphasis added.) As noted above in *Senior Citizen*, this Court held that a taxpayer may overcome any question as to the speculative nature of a project by showing that it has expended sufficient funds towards development of the Property for public use. The Board's failure to establish that the Property is not tax-immune/exempt is further underscored here, because, like in *Senior Citizen*, the Township has expended money by soliciting Amtek Engineering to help with the development of the Property into a playground and maintaining the Property on a regular schedule. Hence, the record supports the trial court's finding that the Township has made a good-faith effort by expending funds to develop the Property for a public purpose.[5] (Trial court op. at 6.)

■ Because property owned by a governmental body (i.e., a township) is presumed to be immune from taxation unless there is evidence presented that the property is being used for a non-governmental purpose, *see Granville*, the trial court correctly placed the burden on the taxing authority to prove the Township's tax liability. With the sole evidence by the Board being the tax assessment record card and a photograph of the Property establishing that it is vacant, the record supports the trial court's finding that there was *no evidence* in the record to suggest that the Property has been used for a non-public purpose and, moreover, supports the findings that the Property is available to the public for recreational activities and was

5. Contrary to the dissent's discussion of factual differences between *Senior Citizen* and this case, we do not solely rest our holding that the Property is tax-immune/exempt on *Senior Citizen*. In fact, we previously noted above factual differences between *Senior Citizen* and this case. Instead, as stated earlier, we view our holding in *Senior Citizen* that the speculative use of property may be overcome by

expending sufficient funds as another barrier over which the taxing authority must hurdle to prove that a governmentally-owned property is not being used for a public or governmental purpose. The Township produced testimony that it spent funds to develop the Property for a public purpose and the Board failed to prove otherwise.

used for the public's benefit. Though not required for a property to be tax-immune/exempt, the trial court also found that the Township made a good-faith effort to develop the Property (as established by the Township's testimony that it had continued to apply for grants, clear trees and debris, and maintain the Property as part of its regular maintenance program for playgrounds/parks). The evidence supports the trial court's findings, and it is insufficient to rebut the presumption—itself supported by a century of case law—that the Property is exempt from taxation. The trial court properly concluded that, "[u]nder these circumstances, taxation of the [P]roperty is neither compelled nor intended by the Pennsylvania Constitution or the County Assessment Law." (Trial court op. at 5–6.)

Accordingly, we affirm.

### ORDER

AND NOW, this 12th day of August, 2013, the August 28, 2012 order of the Court of Common Pleas of Schuylkill County is affirmed.

### DISSENTING OPINION BY Judge SIMPSON.

Because the parcel in question is not actually and regularly used by the public, it does not yet satisfy the constitutional test for tax exemption. Therefore, I respectfully dissent.

Regardless of which party has the burden of proof or what has been decided in other cases, the ultimate legal test is clear. The Pennsylvania Constitution, Article VIII, Section 2(a)(iii), provides (with emphasis added) that the "General Assembly may by law exempt from taxation: . . . [t]hat portion of public property which is *actually and regularly used* for public purposes. . . ." PA. CONST. art. VIII, § 2(a)(iii).

During the July, 2012 hearing, Supervisor Leo Grace spoke about the property acquired by Norwegian Township five years earlier, in August, 2007:

Q. And is it, um, is it the Township's, Norwegian Township's, position that currently the property is being used for public purpose?

A. Yes, we definitely need to add some benches there. And we will do that, we'll order them and we'll have that done. We're trying to get grant money, which hasn't happened.

Q. And you've been trying since 2007, right?

A. Yes.

\* \* \*

Q. *Is it currently being used by the public?*

A. *No.*

Q. All right.

A. *No, no, there's no—there's—there's no bench or anything for them to sit.*

Q. Is there any sign that's indicating that it's a public park?

A. No, the entrance of Norwegian Woods is there, and I'm sure we can put, yeah, we can put some signs up.

We're—our first intent was to put a playground there, but we're definitely not going to get money for that. And that's very expensive to put a new playground there. So until that money becomes available, we'll put some benches there and mark it for community use.

Notes of Testimony, 7/12/12 N.T. at 7–9; Reproduced Record (R.R.) at 10a–12a (emphasis added).

Thus, in the *five years* it owned the property, the Township had not even ordered the park benches and signs, much less installed them. More importantly, Supervisor Grace clearly conceded the prop-

erty was *not* currently being used by the public.

The Township intended the land to be used as a public playground or a "public purpose." With those intentions, "actual and regular use" is crucial. However, I carefully reviewed the trial court's opinion, and I can locate no "actually and regularly used" holding in it. This is not surprising given the admission referenced above. The majority does not cite to such a holding, and it apparently concedes the holding does not appear in the trial court's opinion. Obviously, the trial court is the fact-finder, and it is not appropriate for this Court to supply omitted holdings or embellish the language of the trial court.

As an alternative to the constitutional "actually and regularly used for public purposes" test, both the majority and the trial court cite *Senior Citizen Health Care Council v. Board of Tax Assessment Appeals of Erie County*, 678 A.2d 430 (Pa. Cmwlth.1996), as support for the proposition that a good faith effort to commence developing the property for its intended use would entitle the applicant to the tax exemption. What the majority fails to mention, however, is that the applicant in *Senior Citizen*, acquired the property less than *two months* before the tax year in question. During that time it hired an architect and solicited bids for renovation of its new building. More importantly, there was no question that funds were available through a federal grant. *Id.* at 431. Because those facts are not close to the current situation, *Senior Citizen* is of no guidance in overcoming the constitutional test here.

Supervisor Grace testified that the initial plan was to use the property as a public playground. That future use was speculative, because it was never funded. Despite spending unspecified sums for engineering assistance to obtain grants over five years, grants were never secured, the playground was never built, and it was unclear whether it ever will be. N.T. at 7–9, R.R. at 10a–12a. As to the new plan to develop the property for an untitled "public purpose," the Supervisor felt that benches and signs were needed, but the process of obtaining them had not started at the time of the hearing. *Id.*

Someday this property may satisfy the constitutional "actually and regularly used for public purposes" test. Until that time, it simply does not qualify for tax exemption. Consequently, I would reverse the trial court as to the tax years in question, without prejudice as to future tax years.

President Judge PELLEGRINI joins in this dissent.