IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Indiana University of Pennsylvania, :
                    Appellant          :
                                       :
            v.                         :
                                       :
Jefferson County Board of              :
Assessment Appeals                     :
                                       :
            v.                         :   No. 775 C.D. 2019
                                       :   Argued: May 14, 2020
Punxsutawney Area School District      :
and Borough of Punxsutawney            :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE J. ANDREW CROMPTON, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: December 3, 2020


        The Indiana University of Pennsylvania (University) appeals an order
of the Court of Common Pleas of Jefferson County (trial court) holding that those
portions of University buildings leased to commercial tenants are subject to local
real estate taxes. The trial court held that the University is not immune from local
taxation and is not entitled to a tax exemption. On appeal, the University argues
that the Pennsylvania State System of Higher Education is immune from local
taxation, as is every Commonwealth agency, except where the legislature has
expressly authorized the local taxing authority to levy tax. Because no such

statutory authorization exists here, the University contends that the trial court erred.

## Background

At issue are properties located in the Borough of Punxsutawney, Jefferson County, which were acquired by the University in August 2018. The first property, known as the Fairman Centre, is located at 101 West Mahoning Street and was occupied on the first floor by an insurance agency at the time of acquisition. The second property, known as the Agape and Miller Buildings, is located at 105 and 115-121 West Mahoning Street. At the time of the acquisition, the Agape Building was vacant, and the Miller Building had three commercial tenants.

By letter dated August 31, 2018, the University notified the Jefferson County Assessment Office that the properties should be removed from the County's tax rolls because they were not subject to local taxation. Accompanying the letter was an application for exemption stating that each parcel is "owned by an instrumentality of the Commonwealth of Pennsylvania and [] immune from taxation." Reproduced Record at 32a, 34a (R.R.___).[1] The Jefferson County Board of Assessment Appeals (Board) conducted a hearing. It denied the University's application with respect to the Agape and Miller Buildings, but it exempted that part of the Fairman Centre used for the University's Culinary Institute. The University appealed, and the trial court held a *de novo* hearing on May 3, 2019.

---

[1] The University noted in its August 31, 2018, letter that it was applying for a tax exemption because "some systems used by assessment offices do not have the capability to mark parcels as 'immune', only as exempt." R.R. 31a.

Before the trial court, the University, the Board and the Punxsutawney Area School District (School District) agreed that the county had the burden of proof on its authority to tax. Nevertheless, the University proceeded first with its case.[2]

The University presented the testimony of Susanna Sink, Interim Vice President for Administration and Finance, who is responsible for University facilities. She testified that the University purchased the properties for the Culinary Institute and has "future plans to renovate these buildings" beginning in March 2021. Notes of Testimony (N.T.), 5/3/2019, at 24; R.R. 90a. The renovations will allow the University "to expand the culinary program, upgrade the facility, and promote the culinary certificate and the baking certificate as well as offer potential associate degrees." *Id.* The Fairman Centre, which was recently renovated, will remain as is, but the Agape and Miller Buildings will be razed. Shortly before the hearing, the University had "put out bidding for architectural designs" but had not yet applied for building permits. *Id.*

Sink described the commercial leases that were in place when the University acquired the properties. The insurance agency had entered a three-year lease on May 31, 2016, for the first floor of the Fairman Centre. The lease in the Miller Building for a chiropractor office was scheduled to end on April 30, 2020. A restaurant at the Miller Building was on a month-to-month lease. The beauty salon that occupied part of the Miller Building moved out in October 2018. Sink

---

[2] In immunity cases, the local taxing body bears the burden of demonstrating taxability, and all doubts are to be resolved in favor of the taxpayer. *Lehigh-Northampton Airport Authority v. Lehigh County Board of Assessment Appeals*, 889 A.2d 1168, 1175-76 (Pa. 2005). The trial court, however, allowed the University to present its case first.

testified that the University permitted the existing tenants to stay in their respective locations until they found new locations.

At the time of the hearing, the University was using the second floor of the Fairman Centre for its culinary classes and the first floor (not occupied by the insurance agency) "for the baking program." N.T. 25; R.R. 91a. Sink estimated that approximately 125 students were taking culinary classes in the Fairman Centre. The University intends to convert the third floor for classrooms and faculty offices. The unleased portion of the Miller Building and the entire Agape Building are vacant.

Sink explained that the University's primary mission under the Public School Code of 1949[3] is to provide "instruction for undergraduate and graduate students to and beyond the master's degree in the liberal arts and sciences and in applied fields including the teaching profession." N.T. 16; R.R. 82a. She conceded that the commercial leases do not directly advance the University's educational mission. Sink stated that the vacant portions of the buildings advance the University's statutory purpose because they are slated "for future development." N.T. 28; R.R. 94a.

Neither the School District nor the Board presented evidence.

## Trial Court Decision

In an opinion and order filed May 24, 2019, the trial court partially granted the University's appeal. It concluded that the University was immune from paying local property tax on the land underlying the buildings and the vacant

---

[3] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§1-101 – 27-2702. The University is one of 14 universities in the Pennsylvania State System of Higher Education. Section 2002-A(a)(7) of the Public School Code of 1949, 24 P.S. §20-2002-A(a)(7). Sections 2002-A, 2004-A, 2006-A, and 2008-A were added by the Act of November 12, 1982, P.L. 660, No. 188. Section 2018-A was added by the Act of July 11, 1990, P.L. 424, No. 103.

4

space in each building, but it was subject to taxation on the portions of the buildings encumbered by commercial leases. The trial court recognized that the Public School Code of 1949 authorizes the University to lease property to commercial third parties, but it concluded that the University's primary mission of educational instruction is "in no way furthered by its maintenance of the commercial leases here at issue." Trial Court Decision, 5/24/2019, at 3; R.R. 310a. The trial court concluded that "[w]here the leases are concerned, [the University] is no longer immune from paying local property taxes." *Id.*

In granting the University's appeal with respect to the vacant building space, the trial court explained as follows:

> When [the University] acquired the property, [] it did so for the specific purpose of expanding the Culinary Academy and has developed a detailed master plan to achieve that goal. *See* [Exhibit] B. To that end, it intends to raze and completely replace at least two of the buildings and is currently putting out bids for various phases of the project, which is scheduled to commence next year. Although the bulk of the property is vacant, [the University's] active engagement in the transformational process outlined in Exhibit B means, for all practical purposes, that it is currently using that space in conformity with the purpose for which it was created.

*Id.* The trial court further noted that the School District did not present any evidence that the University's "failure to immediately utilize the vacant space for educational activities was tantamount to using it for commercial endeavors unrelated to its mission." *Id.* The University's appeal to this Court followed.

**Appeal**

On appeal,[4] the University contends that the trial court erred in holding that any portion of its properties could be subjected to local taxation. It asserts that real property owned by the Commonwealth, which includes the University, is immune from taxation, regardless of how it is used, unless the local taxing authority has been granted explicit statutory authority by the General Assembly to tax the property. Here, the local taxing authorities have not been granted express statutory authority to tax University property. The University further argues that the Pennsylvania Supreme Court's decision in *Southeastern Pennsylvania Transportation Authority (SEPTA) v. Board of Revision of Taxes*, 833 A.2d 710 (Pa. 2003) (*SEPTA*), on which the trial court relied, is inapposite to the question of whether the University is immune from taxation.

In response, the School District[5] argues that the University is not immune from local tax if its property is used in a way that does not advance its statutory purpose to provide education. At the time the University applied for tax immunity, only part of one building, the Fairman Centre, was in active use for educational purposes. The School District asserts that the University's leases do not coincide with the University's statutory purpose, *i.e.*, to provide education.

---

[4] This Court's review determines whether the trial court abused its discretion, committed an error of law, or rendered a decision unsupported by substantial evidence. *Walnut-Twelve Associates v. Board of Revision of Taxes of City of Philadelphia*, 570 A.2d 619, 622 (Pa. Cmwlth. 1990). The trial court, as fact finder, has discretion over evidentiary weight and credibility determinations. *1198 Butler Street Associates v. Board of Assessment Appeals, County of Northampton*, 946 A.2d 1131, 1138 n.7 (Pa. Cmwlth. 2008).

[5] The Board joins the School District's brief on this matter.

6

## Analysis

We begin with the legal standards for determining whether government property can be subjected to local tax. The power "to determine what property shall be subject to taxation and what shall be immune is traditionally within the province of the General Assembly." *Commonwealth v. Dauphin County*, 6 A.2d 870, 871 (Pa. 1939). "An arm, agency, subdivision, or municipality of the Commonwealth enjoys sovereign immunity from local real estate taxation…. Property owned by the Commonwealth and its agencies and instrumentalities is presumed to be immune, with the burden on the local taxing body to demonstrate taxability." *City of Philadelphia v. Cumberland County Board of Assessment Appeals*, 81 A.3d 24, 50 (Pa. 2013). The local taxing body may tax real property of the Commonwealth only where it has express statutory authorization to do so. *Dauphin County*, 6 A.2d at 872 ("The legislators did not intend to upset the orderly processes of government by allowing the sovereign power to be burdened by being subjected to municipal taxes.").

A tax exemption differs from a tax immunity. An exemption "carves out specified property from taxation that the taxing body otherwise has the authority to tax." *SEPTA*, 833 A.2d at 713. Article VIII, Section 2 of the Pennsylvania Constitution authorizes the General Assembly to exempt certain classes of property from taxation, including the portion of property "which is actually and regularly used for public purposes." PA. CONST. art. VIII, §2. However, "the distinction between tax immunity and tax exemption is unnecessary in the context of government-owned property." *Norwegian Township v. Schuylkill County Board of Assessment Appeals*, 74 A.3d 1124, 1131 (Pa. Cmwlth. 2013). *See also Dauphin County*, 6 A.2d at 873 (where property is owned outright by the

7

Commonwealth, "the revenues therefrom could only be devoted to public purposes under the Constitution"); *East Stroudsburg University Foundation v. Office of Open Records*, 995 A.2d 496, 504 (Pa. Cmwlth. 2010) ("the government always acts as the government").

The Supreme Court has explained that with regard to tax immunity, the "pivotal factor" should be "whether the institution's real property is so thoroughly under the control of the Commonwealth that, effectively, the institution's property functions as Commonwealth property." *Pennsylvania State University v. Derry Township School District*, 731 A.2d 1272, 1276 (Pa. 1999) (*Penn State II*). A factor in this inquiry is whether the Commonwealth has majority control of the board of governors or board of trustees.[6] *Id.* at 1275-76.

Here, the University is a member of the State System of Higher Education (System). Section 2002-A(a) of the Public School Code of 1949 provides, in relevant part, as follows:

> (a) Subject to the regulatory powers conferred by law upon the State Board of Education, there is hereby established a body corporate and politic constituting a public corporation and government instrumentality to be known as the *State System of Higher Education*, independent of the Department of Education, hereinafter referred to as the system, *which is granted sovereign immunity and official immunity pursuant to 1 Pa.C.S. §2310* (relating to sovereign immunity reaffirmed; specific waiver) and which shall consist of the following institutions and such other institutions, presently existing or

_____

[6] In *Penn State II*, the Court found that Penn State's real property was controlled by a board of trustees. Of the 32 trustees, only ten represented "government" seats held or appointed by the Governor. The remaining 22 members include Penn State's president, nine members elected by alumni and 12 members elected by various agricultural and industrial societies. The Court concluded that because the Commonwealth did not have either functional or legal control over Penn State's real property, there was no basis upon which the university-owned property could be deemed immune from local taxation.

8

until changed as provided under subsections (a.1), (a.2), (a.3), (a.4), (a.5), (a.6) and (a.7):

\* \* \*

(7) Indiana University of Pennsylvania[.]

24 P.S. §20-2002-A(a)(7) (emphasis added).  The System is governed by the Board of Governors, which consists of 20 members including the Governor; the Secretary of Education; a Senator appointed by the President *pro tempore* of the Senate; a Senator appointed by the Minority Leader of the Senate; a Representative appointed by the House Speaker; and a Representative appointed by the House Minority Leader.[7]  Section 2004-A of the Public School Code, 24 P.S. §20-2004-A.  Each institution has a council of trustees that consists of 11 members "who, except for student members, shall be nominated and appointed by the Governor with the advice and consent of the Senate."  Section 2008-A(a) of the Public School Code, 24 P.S. §20-2008-A(a).

In general, the Board of Governors is responsible for the development and operation of the System and its member universities.  Section 2006-A(a) of the Public School Code, 24 P.S. §20-2006-A(a).  This responsibility includes

---

[7] With respect to the rest of the Board of Governors, Section 2004-A(a)(7), (8) provides:

(7) Eleven (11) members shall be appointed by the Governor with the advice and consent of the Senate, of which six (6) members shall be selected from the residents of this Commonwealth and five (5) members shall be selected from trustees of constituent institutions, except that no more than one trustee may represent a constituent institution.

(8) Three (3) of the members shall be students appointed by the board under section 2006-A(a)(17). The student members shall be selected with the advice and consent of institution presidents. A student's term shall expire upon graduation, separation or failure to maintain good academic standing at the institution in which the student is enrolled.

24 P.S. §20-2004-A(a)(7), (8).

9

overseeing the University's dealings in real estate to fulfill its statutory mission.[8] The University is tasked with providing "appropriate educational facilities" as deemed necessary by the Board of Governors. Section 2003-A(a) of the Public School Code, 24 P.S. §20-2003-A(a). The Board of Governors evaluates when new facilities are needed to advance the University's mission, 24 P.S. §20-2003-A(b)(3), and must report all real property decisions to the Secretary of the Budget. 24 P.S. §20-2006-A(a)(9). If the System "deems that it is necessary or desirable to sell, transfer or dispose of real property acquired by and titled to it, *it shall request authorization from the General Assembly* to sell, transfer or dispose of said real property[.]" Section 2018-A(a) of the Public School Code, 24 P.S. §20-2018-A(a) (emphasis added).

The above provisions demonstrate the Commonwealth's control of the University's acquisition and development of real property. Notably, the University cannot sell or transfer any of its property without legislative approval. We conclude that the University's properties are "so thoroughly under the control of the Commonwealth that, effectively, the institution's property functions as Commonwealth property." *Penn State II*, 731 A.2d at 1274. Thus, the

---

[8] The University's primary mission, as a member university in the System, is to provide education "for undergraduate and graduate students to and beyond the master's degree in the liberal arts and sciences and in applied fields[.]" Section 2003-A(a) of the Public School Code, 24 P.S. §20-2003-A(a). As to academia, Section 2003-A(a) also provides that "[p]rograms of research and service may be provided which are approved by the Board of Governors, and which are consistent with the primary mission of the system." *Id*. at §20-2003-A(a). The Board of Governors establishes "broad fiscal, personnel and educational policies under which the institutions of the [System] shall operate" and approves "new undergraduate and graduate degree programs." Section 2006-A(a)(4), (5) of the Public School Code, 24 P.S. §20-2006-A(a)(4), (5). It also has the power to "do and perform generally all of those things necessary and required to accomplish the role and objectives of the system[.]" *Id.* §20-2006-A(a)(15).

University's properties are immune from taxation. *See also Bucks County Community College v. Bucks County Board of Assessment Appeals*, 608 A.2d 622, 624 (Pa. Cmwlth. 1992) (observing that the state-owned universities encompassed in the System are agencies of the Commonwealth entitled to tax immunity).

With the presumption of tax immunity established, the burden shifted to the local taxing entity to demonstrate express legislative authorization to levy a property tax on the real estate in question. *Dauphin County*, 6 A.2d at 872. Here, the School District did not offer any evidence or relevant statutory authority to support its position.

Instead, the School District relied upon *SEPTA*, 833 A.2d 710. The School District argues that the facts in *SEPTA* "mirror the case at issue" and that the Supreme Court's decision in that case "remains determinative and fatal to the University's immunity claim." School District Brief at 4, 7.

*SEPTA* involved a building in downtown Philadelphia used by SEPTA as its headquarters. It leased unused portions of the building to commercial, non-profit and government organizations. SEPTA applied to have the building declared immune and exempt from taxation. The board of revision of taxes granted a partial tax exemption for the portions of property used by SEPTA and leased to other government and non-profit entities. The trial court reversed this decision, finding that the entire building was exempt from taxation. On appeal, this Court reversed. We concluded that SEPTA was not immune from taxation on property it leased to commercial tenants, and it was not entitled to a tax exemption because a commercial real estate business is not a governmental function.

11

On review, the Supreme Court applied what is commonly referred to as the "government use" test, under which a reviewing court considers (1) whether the agency's actions with respect to the property at issue are within its authorized purposes and powers; and (2) whether the property was acquired or used for a purpose that is within the operation of the agency. *SEPTA*, 833 A.2d at 716. The Supreme Court held that SEPTA was authorized to acquire and dispose of property, including the lease of property to third parties to raise revenue and reduce expenses. However, the test's second prong proved problematic. The Supreme Court stated "clearly the leasing of real estate, solely to raise revenue, is not an activity connected to SEPTA's purpose." *Id.* at 717. It reasoned:

> [SEPTA's enabling legislation] does not provide a basis for concluding that in becoming a commercial landlord, SEPTA is absolved or exempted from its responsibility for paying real estate tax on the portion of the property that is utilized for such a commercial venture. In that respect, SEPTA is like any other commercial landlord with which it competes as a landlord.

*Id*. Accordingly, the Supreme Court concluded that the portion of SEPTA's property leased to commercial entities was not immune from taxation.[9]

---

[9] Justice Nigro dissented, arguing that:

> The majority claims to reach its conclusion that SEPTA is not immune by clarifying, then applying, the legal standards governing tax immunity. Instead of clarifying these standards, however, the majority materially alters them, improperly blending those standards with the separate and distinct standards applicable in the tax exemption context.

*SEPTA*, 833 A.2d at 718 (Nigro, J., dissenting). Justice Nigro wrote that *Delaware County Solid Waste Authority v. Berks County Board of Assessment Appeals*, 626 A.2d 528 (Pa. 1993), did not require a determination of whether SEPTA's leasing activities were related to its purpose as a metropolitan transportation authority. He further explained that because the General Assembly empowered SEPTA to lease real estate for the authorized governmental purpose of raising revenue and reducing expenses, he would have held that SEPTA's leased property was immune from taxation.

*SEPTA* is distinguishable. SEPTA and the University are different entities, and they are governed by very different enabling statutes.

SEPTA was established by the Metropolitan Transportation Authorities Act of 1963.[10] SEPTA is governed by a transportation board that "shall not involve itself in the day-to-day administration of the authority's business." Section 1712(b) of the Public Transportation Law, 74 Pa. C.S. §1712(b). The transportation board is made up of residents of the service area, and members appointed by the Governor, by legislative leaders and by the County of Philadelphia.[11] The transportation board has powers over "the authority's operating and capital budgets, the authority's standard of services, utilization of

---

[10] Act of August 14, 1963, P.L. 984, No. 450, *repealed by* the Act of July 10, 1980, P.L. 427, No. 1010. It was replaced by the current Metropolitan Transportation Authorities Act, 74 Pa. C.S. §§1701-1785, which is part of the Public Transportation Law, 74 Pa. C.S. §§1101-2107. All transportation authorities are deemed to have been created under the current act. 74 Pa. C.S. §1711(c)(1).

[11] Section 1713(a) of the Public Transportation Law explains the appointment of transportation board members:

> (1) The Governor may appoint as a member of the board one person, who may be an ex officio appointee from among the various officials in this Commonwealth and whose term as a board member shall run concurrently with that of his Commonwealth position, if any, or the term of the appointing Governor, whichever is shorter.

> (2) The Majority Leader and the Minority Leader of the Senate and the Majority Leader and the Minority Leader of the House of Representatives may each appoint one person to serve as a board member, whose term shall be concurrent with the term and who shall serve at the pleasure of the appointing legislative leader.

> (3) The county commissioners or the county council in each county and, in any county of the first class containing a city of the first class, the mayor, with the approval of the city council, may appoint two persons from each county to serve as board members.

74 Pa. C.S. §1713(a). All members of the transportation board, except for the appointee of the Governor, must be residents of the metropolitan area. 74 Pa. C.S. §1712(b).

technology, the organizational structure and, subject to the provisions of this chapter, the selection of and the establishment of salaries for personnel." 74 Pa. C.S. §1712(b).

SEPTA is authorized to engage in real estate activities under Section 1741(a)(12) of the Public Transportation Law, 74 Pa. C.S. §1741(a)(12). SEPTA has the power to acquire property, 74 Pa. C.S. §1742, and can sell or lease real property at its discretion. 74 Pa. C.S. §1750. However, neither the General Assembly nor the Secretary of the Budget has any role to play in SEPTA's real estate transactions.

By contrast, a Commonwealth agency, including the State System of Higher Education, cannot transfer its real property without the approval of the General Assembly. Section 2018-A of the Public School Code provides, in part, as follows:

> (a) Whenever the system deems that it is necessary or desirable to sell, transfer or dispose of real property acquired by and titled to it, it shall request authorization from the General Assembly to sell, transfer or dispose of said real property; and from time to time, as necessary, the system shall submit to the Chief Clerk of the House of Representatives and the Secretary of the Senate requests to sell, transfer or dispose of real property acquired by and titled to the system for consideration by the General Assembly.

> (b) Each request for authorization to sell, transfer or dispose of real property transmitted to the General Assembly shall be proposed as a resolution, and shall be placed on the calendar of each house for the next legislative day following its receipt, and shall be considered by each house within thirty (30) calendar days of continuous session of the General Assembly.

> (c) Each request for authorization to sell, transfer or dispose of real property shall take effect if it is approved by a majority

14

vote of the duly elected membership of each house during such thirty-day period or may be disapproved by either house during that period by a majority vote of the duly elected membership of each house.

24 P.S. §20-2018-A.

*SEPTA* is also distinguishable on its facts. The University purchased the buildings for the purpose of turning them into University facilities. It inherited commercial leases but had no intention to continue them for the long haul. Rather, it acted like a responsible landlord by allowing the tenants to stay until they found new space. By contrast, SEPTA acquired its building with the intention to use at least part of the building as an ongoing commercial real estate business.

The University is not a municipal authority. Rather, it was created by the General Assembly to carry out one of the central missions of the Commonwealth, *i.e.*, education. To allow local taxation of University property for that part leased to private parties has implications for all Commonwealth property. It would allow, for example, the City of Harrisburg to tax that part of the State Capitol leased for the operation of a cafeteria.

**Conclusion**

Because the University-owned real estate at issue in this case is effectively under the control of the Commonwealth government, it is presumptively immune from local taxation.[12] The School District did not

---

[12] The School District refers us to this Court's unpublished decisions in *The Pennsylvania State System of Higher Education v. Indiana Area School District* (Pa. Cmwlth., No. 184 M.D. 2011, filed April 5, 2012), *aff'd per curiam*, 69 A.3d 236 (Pa. 2013), and *Indiana University of Pennsylvania v. Indiana County Board of Assessment Appeals* (Pa. Cmwlth., No. 1923 C.D. 2014, filed September 17, 2015), *appeal denied*, 140 A.3d 14 (Pa. 2016). These cases involved the University-owned Robertshaw Property, which was used to operate the Indiana County Small Business Incubator and for administrative offices and classrooms. The Incubator is part of the University's College of Business and provides assistance to start-up or developing companies in

15

demonstrate that it has legislative authority to levy property taxes on the University properties. Accordingly, we affirm the trial court's order insofar as it held the University is immune from paying tax on the land and vacant building space. The order of the trial court is reversed insofar as it imposed local real estate tax on the buildings encumbered by commercial leases.

_____
MARY HANNAH LEAVITT, President Judge

---

Indiana County. The property was originally tax exempt under the Keystone Opportunity Enterprise Zone, which expired in 2011. In both appeals to this Court, we determined that the property was not immune or exempt from local property tax because the commercial leases to third parties did not further the University's purpose of educating undergraduate and graduate students.

To the extent that these cases contain language that is inconsistent with today's decision, they are overruled. We acknowledge that our Supreme Court affirmed this Court's decision in the first Incubator case cited above. The Court did so by *per curiam* order, however, and did not explain its rationale or provide any guidance on the legal issues.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Indiana University of Pennsylvania,     :
                Appellant        :
                                  :
            v.                :
                                  :
Jefferson County Board of          :
Assessment Appeals               :
                                  :
            v.                :    No. 775 C.D. 2019
                                  :
Punxsutawney Area School District  :
and Borough of Punxsutawney     :

## **O R D E R**

AND NOW, this 3rd day of December, 2020, the order of the Court of Common Pleas of Jefferson County dated May 23, 2019, is AFFIRMED in part and REVERSED in part in accordance with the foregoing opinion.

_____
MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Indiana University of Pennsylvania, :
      Appellant :
          :
     v.      :
          :
Jefferson County Board of Assessment :
Appeals :
          :
     v.      : No. 775 C.D. 2019
          : Argued:  May 14, 2020
Punxsutawney Area School District :
and Borough of Punxsutawney :

**BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
    HONORABLE RENÉE COHN JUBELIRER, Judge
    HONORABLE P. KEVIN BROBSON, Judge
    HONORABLE ANNE E. COVEY, Judge
    HONORABLE MICHAEL H. WOJCIK, Judge
    HONORABLE CHRISTINE FIZZANO CANNON, Judge
    HONORABLE J. ANDREW CROMPTON, Judge**

**DISSENTING OPINION
BY JUDGE BROBSON**     **FILED:  December 3, 2020**

Notwithstanding appealing aspects of the majority opinion, I respectfully cannot join.  The Court of Common Pleas of Jefferson County did not err in its application of the Pennsylvania Supreme Court's binding precedent in *Southeastern Pennsylvania Transportation Authority (SEPTA) v. Board of Revision of Taxes*, 833 A.2d 710 (Pa. 2003), to the facts of this case.  Moreover, I respectfully disagree with the majority's decision to overrule this Court's prior unreported decisions in *Pennsylvania State System of Higher Education v. Indiana Area School District* (Pa. Cmwlth., No. 184 M.D. 2011, filed April 5, 2012), *aff'd per curiam*,

69 A.3d 236 (Pa. 2013), and *Indiana University of Pennsylvania v. Indiana County Board of Assessment Appeals* (Pa. Cmwlth., No. 1923 C.D. 2014, filed September 17, 2015), *appeal denied*, 140 A.3d 14 (Pa. 2016).

I, therefore, respectfully dissent.

_____
P. KEVIN BROBSON, Judge

Judge Covey joins in this Dissenting Opinion.